L. Kingsley Smith, J.
In this matrimonial action two motions are presented for determination. The plaintiff’s motion seeks a dismissal of five of the six affirmative defenses pleaded by the defendant, on the ground that they are legally insufficient. The defendant’s motion seeks an allowance of counsel fees to defend this action.
The parties are husband and wife and have lived separate and apart pursuant to a judgment of separation granted in favor of the wife by this court on October 25, 1961.
The plaintiff husband commenced this action for an absolute divorce on September 12, 1968 upon the ground that he and the defendant wife have lived apart pursuant to a decree or judgment of separation for a period of two years after the granting of such degree or judgment and that the plaintiff has substantially performed all the terms and conditions of such decree or judgment (Domestic Relations Law, § 170, subd. [5], as added by L. 1966, ch. 254, and amd. by L. 1968, ch. 700).
The six affirmative defenses interposed by the defendant may be summarized in numerical order as follows:
(1) That the plaintiff has been living in open adultery with his paramour in all the years since the granting of the separation judgment and down to the time of the commencement of this action;
(2) that the plaintiff procured a void ex parte Mexican decree of divorce in February, 1962, shortly thereafter married his paramour in Connecticut, and since then has lived with her as husband and wife;
(3) that in 1963 this defendant obtained a declaratory judgment from this court adjudging the Mexican decree of divorce to be void;
(4) that the plaintiff has not been timely in paying alimony required to be paid under the judgment of separation;
(5) that by reason of his conduct since the granting of the judgment of separation the plaintiff does not come into court with clean hands; and
*174 (6) that subdivision (5) of section 170 (erroneously referred to in the answer as subdivision [6]), of the Domestic Relations Law is unconstitutional if it is applied to the aforesaid separation judgment which was granted prior to the enactment of such statute.
The plaintiff’s motion is directed at all the defenses with the exception of the “fourth” (untimely alimony payments). The decretal portions of the separation judgment contain directions (1) granting a separation in favor of the defendant; (2) pertaining to custody of two children who have since become adults; (3) providing for payment of alimony; (4) granting exclusive possession of certain real property to the defendant herein; and (5) granting exclusive possession of other real property to the plaintiff herein. It is contended by the plaintiff that since the separation judgment contained no directions which could be considered involved in the proffered defenses except the one relating to untimely alimony payments, there is no issue to try with respect to such defenses. The court is inclined to agree with this contention of the plaintiff insofar as it relates to defenses numbered “first”, “ second”, and “ third ”.
The defendant argues, however, that the judgment of separation granted in 1961 determined that the plaintiff herein was the ‘ ‘ guilty ’ ’ party and that the defendant herein was the ‘ ‘ innocent ’ ’ and successful party in that matrimonial action. The defendant further argues it was not the intention of the Legislature to permit the “ guilty ” spouse under a separation judgment granted prior to September 1, 1967 to maintain an action for divorce based on subdivision (5) of 'Section 170 of the Domestic Relations Law. That was the conclusion reached in Church v. Church (58 Misc 2d 753), where the court held that such a result would offend the public policy of the State of New York. In Goldenberg v. Goldenberg (N. Y. L. J., Dec. 4, 1968, p. 17, col. 3 [Sup. Ct., Kings County, Morrissey, J.]), the court reached substantially the same result.
It is this court’s view that the drastic revision of the law of divorce in general and section 170 in particular in 1966, following years of agitation for relaxation of New York’s divorce law, represented a deliberate departure from this State’s previous policy and that it is the court’s duty both to recognize such change and to give it effect, at least within constitutional limits.
In the new section 170, besides adding three new “fault” grounds to the traditional one of adultery as the basis for an action of divorce, the Legislature included two “non-fault” *175 grounds based on living apart for two years either pursuant to a judgment of separation or pursuant to a duly filed separation agreement. Some critics of the inclusion of these “ non-fault ” grounds have characterized this method of dissolving a marriage as “ divorce by consent ”. A more accurate view would seem to be that the addition of the “ non-fault ” grounds for divorce was a recognition of certain “ dead marriages ” whose lifeless state has been substantiated by the fact that the spouses have lived apart for the required statutory period (1966 Report of Joint Legislative Committe on Matrimonial and Family Laws, March 31, 1966; N. Y. Legis. Doc., 1966, No. 8, pp. 89^ — 92; cf., Wadlington, Divorce Without Fault Without Perjury, 52 Va. L. Rev. 32 [1966]). Irrespective of what may be said for or against the rationale underlying* such legislative recognition of “ dead marriages ” this court is unable to find a basis for judicially introducing into the statute a “fault” test which the Legislature did not include. Nor can this court find any basis for adding eligibility requirements not found in the statute for plaintiff’s right to maintain this action which would make the “ first ”, “ second” and “ third” defenses sufficient per se.
For the reasons indicated, the plaintiff’s motion to dismiss the defenses numbered “ first ”, “ second ”, and “ third ” is granted.
In the defense numbered ‘ ‘ fifth ’ ’ the defendant has invoked the maxim “He who comes into equity must come with clean hands.” The plaintiff asserts that the “ clean hands ” doctrine has no application to this case. While it is true that at common law the courts of this State had no jurisdiction over matrimonial matters and that the power of this court over such matters is derived solely by virtue of statutory authority (Matter of Seitz v. Drogheo, 21 N Y 2d 181, 185), it is equally true that matrimonial actions are handled on the equity side of the court. With respect to the manner in which matrimoniáis are treated, the Court of Appeals has stated: ‘ ‘ Matrimonial actions are neither actions at law nor suits in equity, but statutory actions modeled largely upon equity procedure. Both power and practice depend on the statute, except that where the statute is silent the practice usually follows the rule in equity.” (People ex rel. Levine v. Shea, 201 N. Y. 471, 478.)
There can be no doubt that prior to the enactment of the so-called “ Divorce Reform Law ” (L. 1966, ch. 254) the doctrine of “ clean hands ” has been applied by the Supreme Court to deny relief in matrimonial actions. (Lodati v. Lodati, 268 App. Div. 1003; Gevis v. Gevis, 141 N. Y. S. 2d 121, 123; Holiber *176 v. Holiber, 207 Misc. 716.) This traditional equity doctrine would not seem to have been abrogated by anything set forth in provisions of the new divorce law and it is this court’s view that a determination should not be made in advance of trial, as a matter of law, that the doctrine may not be invoked by the defendant. Whether the cumulative effect of the plaintiff’s course of conduct, in all of its aspects, since the granting of the separation judgment, warrants application of the doctrine of “clean hands” is a determination which should be made by the trial court. In a leading text it has been stated that this doctrine “ assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him all recognition and relief with reference to the subject-matter or transaction in question. It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.” (2 Pomeroy, Equity Jurisprudence [5th ed.], § 397, pp. 91-92.) In permitting the “ fifth ” defense to stand, this court is not to be understood as in any sense having determined at this early stage of the litigation that the plaintiff either has or has not been guilty of conduct which would disable him from obtaining the relief he seeks in a court of equity. Whether the power of a court of equity shall be exercised affirmatively in his behalf should be determined after the trial court has had the benefit of all the evidence and a full opportunity to evaluate the matter. Accordingly, the plaintiff’s motion to dismiss the defense numbered “ fifth ” is denied.
There remains for consideration so much of plantiff’s motion as is directed at the “ sixth ” defense. Essentially, the question posed by the ‘ ‘ sixth ’ ’ defense is whether the defendant will be deprived of constitutionally protected rights if subdivision (5) of section 170 is given a retroactive application. It is important to note that this defense proceeds upon the underlying assumption that subdivision (5) of section 170 was intended, when enacted, to operate retroactively. Neither of the motions now before the court has expressly raised the question of whether subdivision (5) of section 170 was intended to apply to separation judgments granted before September 1, 1967. The briefs submitted have not treated that question but have insteád assumed retroactivity and then discussed the *177 constitutionality or unconstitutionality of such an application of the statute in the circumstances of this case.
In one recent case a finding was made that retroactive application of subdivision (5) of section 170 was intended (Adelman v. Adelman, 58 Misc 2d 803). In another case the court sustained retroactive application of subdivision (5) of section 170, but without expressly discussing whether retroactivity was intended (Gleason v. Gleason, 59 Misc 2d 96). In still another recent case, retroactive application of subdivision (5) of section 170 was discussed in connection with arriving at a determination that subdivision (2) [abandonment] is to be construed as having retroactive application. (Kaplan v. Kaplan, 31 A D 2d 247.) The court noted in Gleason v. Gleason (supra) the lack of uniformity in decisions thus far concerning the manner in which subdivision (5) of section 170 is to be applied. Such lack of uniformity may well be a reflection of judicial concern about the impact of a retroactive application of the statute upon situations which had crystallized before enactment of the new law. (cf. Waldington, Divorce Without Fault Without Perjury, supra, p. 80.) Courts in other jurisdictions confronted with the problem of determining the manner in which divorce statutes based on ‘ ‘ living apart ’ ’ grounds are to be applied have not been uniform in the conclusions reached. (See Retrospective Effect of Statute Prescribing Grounds of Divorce, Ann. 23 ALR 3d 626.)
In this court’s view the statutory section upon which this action is predicated is susceptible to a construction which does not lead to a finding of unconstitutionality. Mindful of the strong presumption of constitutionality as well as the restricted circumstances in which courts of first instance should declare legislation unconstitutional, this court believes a construction should be sought which permits the statute to “ stand without conflict with the fundamental law” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150). Therefore, it is deemed appropriate, even though the parties have not raised the question of legislative intent, for the court to express its view that subdivision (5) of section 170 was not intended to have retroactive application. The court is impelled to express such view because it regards the question of legislative intent for or against retroactivity as being closely related to, if not intertwined with, the substance of this litigation. The court, however, recognizes that in the framework of the motions under consideration, the views expressed on retroactivity may be regarded as dicta.
*178 Legislative intent for retroactivity is said to be found in the amendatory legislation enacted at the 1968 legislative session. 'Chapter 700 of the Laws of 1968 specifically made subdivision (6) of section 170’ [separation agreements] prospectively applicable only. It is reported that the Legislature failed to take similar action in respect of subdivision (5) of section 170 [separation judgments]. From this disparate treatment of the ‘ ‘ non-fault ’ ’ grounds, it is claimed that there emerges a clear intent to give subdivision (5) of section 170 retroactive application. That is the view expressed in the legislative memorandum relating to chapter 700 of the Laws of 1968 (Legislative Memorandum of the Joint Legislative Committee on Matrimonial and Family laws, McKinney’s 1968 Session Laws of N. Y., vol. 2, p. 2308), which view was adopted by the court in Adelman v. Adelman (supra) and referred to in Kaplan v. Kaplan (supra). However, the view expressed in the legislative memorandum loses sight of the fact that it is not the legislative intent in 1968 which is to be sought, but rather the legislative intent in 1966. Moreover, the modifications in the language of subdivision (5) of section 170, effected by the 1968 amendment, did not deal with the question of retrospective application of the statute. As a result, as far as express language is concerned subdivision (5) of Section 170 is as silent on the question of retroactivity in its 1968 amended form as it was in the original 1966 version. In construing amendatory statutes “it is the genral rule that an amendment will have prospective application only, unless its language clearly indicates that it shall receive a contrary interpretation. Hence, a provision in an amendatory .statute that ‘ this act shall take effect immediately ’ has been held to exclude the idea that it should be retroactive.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § '52.) In connection with the construction of Federal tax statutes and the use of subsequent statutes as interpretative aids, it has been stated: 1 ‘ The general rule is that later statutes may not be used as an aid in the interpretation of earlier acts # * *. It is the legislative intent at the time of enactment and not its [Congress’] afterthoughts which should be controlling. 1 Mertens, Law of Federal Income Taxation, § 3.28 pp. 114 and 116. (Cited with approval in Saunders v. Commissioner of Internal Revenue, 215 F. 2d 768, 775.) Even if it be conceded that there are instances in which reference to an amendatory statute will be of assistance in ascertaining legislative intent at the time of enactment of the original statute, the 1968 amendment here is of no help. If retroactivity were intended, it would have *179 been easy for the Legislature to have said so and included express language to that effect. (McKinney’s, Statutes, § 74.)
Foster and Freed in their analysis (The Divorce Reform Law [1968] p. 17), pointed out that unfortunately no official record was made of the Senate debate on this matter in 1966, but that the Chairman of the Judiciary Committee and one of the sponsors of the legislation “ in response to questions was emphatic in making it clear that the new law could not be applied to old agreements or separation decrees, i.e., those entered into or rendered before September 1, 1966.” The same authors note that the Chairman of the Judiciary Committe “ also reported that he had ‘ legal advise ’ that it would be unconstitutional to provide for a retroactive application of the new ‘ living apart ’ grounds ” (Divorce Reform Law, supra, p. 17). While the court recognizes that the foregoing may be of doubtful assistance as an extrinsic aid to construction on the question of legislative intent, it nevertheless feels justified in making the reference because of the lack of other contemporaneous aids to construction.
Opposed to a retroactive construction of the statutory provision here involved is a long line of case law collated in section 51 of McKinney’s Statutes. The following excerpts from such section are deemed pertinent: (pp. 67-71) “As a general rule a construction of a statute which will give it a retroactive operation is not favored by the courts. Thus it is said that all statutes are presumed to furnish a rule for future action only, and a law will not receive a retroactive construction unless its language, either expressly or by necessary implication, requires that it be so construed. Even where the words are so general and broad as in their literal sense to comprehend existing cases, they must yet be construed as applicable only to auch as may thereafter arise, unless the intention to embrace all is plainly and unequivocally expressed, and if all the language of a law can be satisfied by giving it a prospective operation only, it should not apply retrospectively. * * # (pp. 73-74) Retroactive constructions are likewise to be avoided where such operation would cause a statute to work an injustice, and in determining whether a retroactive operation was intended it is legitimate to show that one construction would lead to hardships which another would avoid. * * * (p. 75) A postponement of the effective date of a statute, moreover, is some evidence that the Legislature never intended it to be retroactive, but if a statute expressly recites that it shall be construed as having been in effect at a certain previous time, it is to be construed as retroactive to such time. Moreover, a *180 statute may be so worded that it applies to past acts exclusively. Such is the case in respect to curative acts, or acts designed to remedy some defect in proceedings already prosecuted. These, as well as remedial and procedural statutes, constitute an exception to the general rule against retroactive operation.”
In the light of the history of New York’s divorce law (1966 Report of Joint Legis. Comm, on Matrimonial and Family Laws, supra, p. 21), the statutory provision under consideration is not “ remedial ” in the legal sense, but represents a far-reaching substantive change in the law and as such should be regarded as coming within the general rule against retroactive operation.
The “Divorce Reform Law” (L. 1966, ch. 254), although enacted in 1966, did not take effect until September 1, 1967. Section 15 of the enacting statute provided that the two-year period of ‘ ‘ living apart ’ ’ could not be computed from a date prior to September 1, 1966. There is nothing in the statute to indicate that the provision here involved was to apply to the undetermined number of separation judgments already in existence throughout the State when the new legislation was enacted. Some idea of the number of separation judgments which may be affected by a retrospective application of subdivision (5) of section 170, is revealed by responses to this court’s inquiries. The Judicial Conference, in response to this court’s inquiry, has advised that in the last four years (1964/1965-1967/1968 [July through June]) on a State-wide basis, there were 2,914 separation actions which resulted in a decision for the plaintiff. In the same period there were 46 default or “ consent ” judgments in separation actions. These figures do not include separation actions in which a decision was rendered in favor of the defendant, since Judicial Conference records do not contain such information. The office of the County Clerk of Nassau County, at this court’s request, has reported that in a period of 11 years (1958-1968, inclusive), there were judgments granted in 746 separation actions.
If it was the purpose and intent to attach so new and radical an effect to the many existing separation judgments, such a determination should come from the Legislature in clear and unmistakable language and not as the result of judicial construction on the basis of legislative silence. (McKinney’s, Statutes, §§ 74 and 153; Crawford, Construction of Statutes [1940], § 168, p. 268.) Furthermore, in this court’s opinion, there is an inherent inj astice, aside from constitutional considerations in grafting on existing separation judgments the unforeseen legal consequences which retroactive application of subdivision (5) of section 170 would necessarily entail. “ But *181 considerable care should be exercised in order that a judgment-secured before the enactment of the regulatory statute may not be impaired, destroyed or extended. In fact, no statute should receive a construction which will impair an existing judgment or enlarge or validate it in any way. As a result, in case of doubt, statutes affecting judgments should be regarded as applying to subsequently secured judgments only.” (Crawford, supra, § 293, pp. 591-592).
However, if this court’s view against retroactive application of subdivision (5) of section 170 should be regarded as incorrect, then it would seem that the defendant’s challenge on constitutional grounds may have sufficient merit to justify allowing the “ sixth ” defense to stand.
The plaintiff contends that a retroactive application of subdivision (5) of section 170 involves no uneonstituional infringement of the defendant’s rights. It is argued by the plaintiff that defendant’s claim that she will be deprived of the right to inherit from the plaintiff is lacking in merit because she has no vested right to share in her husband’s estate; that such right of inheritance is merely inchoate and that as such right is conferred so may it be taken away by the Legislature. (Matter of Adams, 182 Misc. 937, affd. 267 App. Div. 985.) While it is true that the Legislature could take away a wife’s right of election to take against her husband’s will, it could not do so on a discriminatory basis. That is to say, the Legislature could not single out a special class of wives, i.e., only those who have obtained separation judgments against “ guilty ” husbands and penalize them. Furthermore, with 'respect to a wife separated from her husband by virtue of a separation judgment, her status as a wife having been adjudicated as -such by the court cannot be regarded as something “inchoate”, but rather as a vested right which may not be taken away arbitrarily. (Cf. Waddey v. Waddey, 290 N. Y. 251.)
Even assuming that the Legislature did intend subdivision (5) of section 170 to operate retroactively, it seems to this court that a property right question does not necessarily arise. It is suggested that it would be quite feasible to treat the divorce as a divisible decree which dissolved the marriage but left property rights unimpaired, in a manner similar to that employed in connection with a foreign divorce. (Cf. Estin v. Estin, 334 U. S. 541.) In other words, it would seem preferable to give effect to as much of the legislative intent as possible instead of determining that all relief must be denied because of deciding a priori that a property right question makes such *182 complete denial of relief necessary. For the reasons which have been indicated, plaintiff’s motion to dismiss the “ sixth ” defense is denied.
The defendant’s motion for an allowance of counsel fees is granted to the extent of awarding her an interim allowance of, $1,000 to be paid by the plaintiff one half within 30 days after service of a copy of the order entered hereon with notice of entry, and the balance within 90 days thereafter, with leave to apply for a further allowance to the trial court, or to special term should developments in this action warrant such additional allowance.