Joseph A. Suozzi, J.
This is an action for an absolute divorce brought pursuant to subdivision (5) of section 170 of the Domestic Relations Law, based upon the ground of living apart for a period of two years under a decree of separation entered on November 27, 1959. This case squarely presents for the first time to this court the issue of whether subdivision (5) of section 170, passed in 1966 to take effect on September 1, 1967, and as amended in 1968, is to be applied retroactively.
The plaintiff herein was the innocent party in the prior action. Except for the defendant’s opposition to the demand for alimony and counsel fees, he has not resisted this action. Notwithstanding this, unless this court is to be relegated to the function of dispensing divorces by consent, the court must initially determine that the grounds for divorce exist under the statute.
The determination of whether the grounds for divorce exist here actually involves two questions, to wit: (1) Did the Legislature in enacting subdivision (5) of section 170 intend it to have retroactivity; and (2) if it did, can it constitutionally be applied retroactively? The point as to the constitutionality of retroactive application is reached only in the event that the Legislature’s intent is interpreted as being in favor of retroactivity.
All of the Trial and Special Term decisions in the First and Second Departments which have dealt with this subdivision from varying legal postures, with the exception of Abelson v. Abelson (59 Misc 2d 172), have decided in favor of retroactive application of this subdivision. The majority of these decisions, all of which are reviewed in Gleason v. Gleason (59 Misc 2d 96), have held that it may be constitutionally applied retroactively without regard to which party in the prior separation action institutes the divorce action (LeClaire v. LeClaire, 58 Misc 2d 41; Frischman v. Frischman, 58 Misc 2d 208; Adelman v. Adelman, 58 Misc 2d 803; and Levin v. Levin, N. Y. L. J., Feb. 5, 1969, p. 18, col. 5). Gleason v. Gleason (supra) followed this majority. The remaining decisions have similarly sustained the *346 constitutionality of its retroactive application, but have limited relief to the innocent (Church v. Church, 58 Misc 2d 753 and Goldenberg v. Goldenberg, N. Y. L. J., Dec. 4, 1968, p. 17, col. 3).
To these two categories the recent decision in Shapiro v. Shapiro (59 Misc 2d 412, 419) has added a third category by a “two-facet” conclusion which holds that “subdivision (5) may be retroactively applied to ‘ old ’ decrees in cases brought by innocent spouses, but must be applied prospectively only in actions instituted by a guilty spouse ”.
On the basis of any one of these decisions except Abelson the plaintiff herein would be entitled to a judgment of divorce. However, for reasons which I shall discuss hereafter, I cannot agree with these decisions to the extent that they conclude, either by an express holding or by implication, that the Legislature which enacted this subdivision intended it to be applied retroactively. I therefore cannot adopt their conclusion as controlling on the issue presented here.
In my opinion the view expressed in Abelson v. Abelson (supra) admittedly by way of dictum, that the Legislature did not intend retroactive application of subdivision (5), is more in harmony with classical and traditional views of judicial construction. I am mindful of the recent decision of the Appellate Division, Second Department in Kaplan v. Kaplan (31 A D 2d 247). Subdivision (5), although discussed in the decision, was not before the court for interpretation. Furthermore, the footnote .suggests that the decision is not controlling or determinative of the issue presented here.
As was stated in Shapiro v. Shapiro (supra, p. 414): “ It is a cardinal rule of statutory construction that the legislative intent is the great and controlling factor, and that such intention is to be determined primarily from the language of the statute under consideration ’ ’. Any judicial effort to interpret or construe the legislative intent relating to subdivision (5) must begin with an acknowledgment that the language used is silent on this issue, and that ‘ ‘ no clear indication of the legislative intent appears in the words selected by the revisors ” at the 1966 legislative session (Gershenson, Milton G., The Divorce Reform Law: A Brief for Retroactivity, N. Y. L. J., July 24-26, 1967). The “ considerable uncertainty” as to the retroactive effect of subdivision (5) was noted in The Divorce Reform Law, an analysis by Prof. Henry H. Foster, Jr. and Dr. Doris Jonas Freed (The Lawyers Co-operative Publishing Co., Rochester, N. Y., 1968).
This same analysis suggests that the legislative history of the Divorce Reform Law and the statements which were made *347 at the time of its enactment support the position against retro-activity. As Foster and Freed point out, ‘ ‘ the matter is obscured due to the failure to maintain an official record of Senate debates.” (p. 17).
On April 27,1966, Senator John H. Hughes, Chairman of the Judiciary Committee and one of the sponsors of the so-called “leader’s bill” and the compromise bill finally enacted, in response to questions was emphatic in making it clear that the new law could not be applied to old agreements or separation decrees, i.e., those entered into or rendered before September 1, 1966. Senator Hughes also reported that he had “ legal advice ’ ’ that it would be unconstitutional to provide for a retroactive application of the new ‘1 living apart ’ ’ ground. On the basis of the above-cited decisions the legal advice received by the Senator may be questionable. However questionable the “ legal advice ”, there is no question or ambiguity as to this expression against retroactivity by an influential member of the Legislature which enacted the statute.
In the absence of clear language of intention, a legislative intention as to retroactivity becomes a matter of implying it or judicially creating it.
The case for retroactivity of subdivision (5) rests heavily, if not entirely, on two foundations, to wit, (1) the judicial characterization of the statute as remedial as opposed to substantive, and (2) the memorandum of the Joint Legislative Committee on Matrimonial and Family Laws, prepared and published in connection with the 1968 amendments to the statute.
It is fundamental in construing legislative intent that the courts are bound by the canons of statutory construction. As Professor Grershenson has so succinctly stated, “the almost axiomatic rule of construction of ambiguous or silent statutes ” is that they “ are to be applied prospectively in the absence of a clear intention of the legislature to the contrary. But there is another equally fundamental rule of construction: That remedial statutes * * * are to be liberally construed, and 1 constitute an exception to the general rule that the statutes are not to be given a retroactive operation ’ ”. (Grershenson, supra, N. Y. L. J. July 25, 1967.)
In a popular sense of the term all statutes are remedial, in that they are designed to improve on the existing law or there would have been no reason to enact them in the first place. In the present context, however, “ remedial ” has a narrower meaning. The problem posed in trying to define a remedial statute is capsuled in an article by Michael L. McCarthy entitled *348 Retroactive Application of New Grounds for Divorce under § 170 Domestic Relations Law (17 Buffalo L. Rev., 902, 908-910):
“ The Courts have assumed that the term ‘ remedial ’ has a limited meaning in two respects: Usually, ‘ remedial ’ is used in connection with legislation not penal or criminal in nature; and ‘ remedial ’ as applied to procedural statutes which do not affect substantive rights. * * *
“However, a statute, even though it be remedial, may not be retroactively applied when a ‘ new right ’ is established. It is difficult to discern from the case law whether a disqualifying ‘ new right ’ means a new right of possession, that being a substantive legal right, or a mere remedy, and even if it is a mere remedy, whether retroactive application would have the effect of creating a new right of action which was forbidden in a number of cases. The answer seems to lie in the distinction that a mere remedy means an added procedure to enforce a pre-existing right, rather than a remedy which simultaneously creates and enforces a right. Statutes providing a remedy for a pre-existing right where none existed previously, and adding to the remedies already in existence, are valid when applied to future or past transactions. ’ ’ (Emphasis supplied.)
Does subdivision (5) provide a remedy which simultaneously creates and enforces a right, or does it grant or add a new remedy for the enforcement of existing rights 1 In Shapiro v. Shapiro (supra, p. 419) Mr. Justice Frank answered this question in the following manner: “ Insofar as subdivision (5) makes available the further remedy of a divorce to an innocent spouse who had initially obtained a separation decree predicated upon the other spouse’s misconduct such statute is clearly remedial in the sense of the exception. There was a remedy already available to such innocent party even prior to the enactment of the statute — i.e., a separation action. With respect to such party, subdivision (5) merely provided an additional remedy by way of divorce, that is, it has enlarged the remedy by now making two remedies available to the innocent party where formerly there was only one.”
The difficulty with this approach is that subdivision (5) does not grant or add a new remedy to enforce existing rights, but rather creates a new right and the remedy to enforce it at the same time. Before the 1966 revision of the Domestic Relations Law the remedy of separation was available for a spouse’s misconduct by way of cruel and inhuman treatment, abandonment, nonsupport and adultery (§ 200, subds. 1, 2, 3, 4 and 5), and the remedy of divorce was available only for a spouse’s adultery. The additional remedy of divorce for cruel *349 and inhuman treatment, abandonment and nonsupport was granted or added by subdivisions (1), (2) and (3) of section 170 and not by subdivisions (5) or (6).
To state that subdivision (5) adds another remedy for misconduct which would have entitled one spouse to a separation is to ignore the fact that both subdivisions (5) and (6) created grounds which were entirely new and were based not on misconduct— which connotes fault — but rather on the ground of 1 ‘ living apart ’ ’ which has generally been characterized and described as a “ non-fault ” ground. It was by reason of the inclusion of this new nonfault ground that the revised divorce laws were hailed as a long overdue and necessary reform. The conclusion reached in Kaplan relative to the retroactivity of subdivision (2) cannot be transposed to. subdivisions (5) and (6) without ignoring this basic distinction between a right and the remedy to enforce it. This may explain the caveat in the footnote to the Kaplan opinion which states (31 A D 2d 247, 250, supra): “ We, of course, are not presently called upon to, nor do we, determine the rights of spouses under subdivision (5).”
It cannot be gainsaid that the statute under discussion, and particularly subdivisions (5) and (6), effected a substantial alteration in the substantive law of this State. The inclusion of these nonfault grounds in the first major revision of the divorce laws of New York marked the beginning of a new public and social policy fundamentally different from the one that had prevailed for over 100 years. This piece of legislation, which was subjected to such intense and conflicting political, social and religious pressures, can hardly be deemed remedial and should not be so characterized for the purpose of giving it a retroactive effect which the Legislature did not expressly set forth.
Parenthetically, it should be observed that the addition of these new nonfault grounds conceivably could actually result in depriving a spouse of a remedy that he or she might now have, rather than add a new remedy. This deprivation would arise from the fact that unless an aggrieved party is willing to face the possibility and probability of a divorce action by his or her spouse at the end of the two-year period following either a separation agreement or decree, that this party would elect not to exercise even the remedy of separation. This effect on an existing remedy for a spouse’s misconduct has the appearance of being substantive rather than remedial.
The other basis on which the case for retroactivity rests is the memorandum of the Joint Legislative Committee on Matri *350 monial and Family Laws (McKinney’s Sess. Laws of N. Y., 1968, vol. 2, p. 2308), which reads in part as follows:
“ The living apart ground for divorce based upon an agreement of separation is being amended to recite that the agreement must be one subscribed and acknowledged on or after August 1, 1966. This language is being added in order to clearly show that there is no legislative intent that this section have retroactive effect.
1 ‘ As originally introduced this bill would also have provided that the separation ground for divorce based upon a judgment or decree of .separation must have been one granted on or after September 1, 1966. By amendment, this limitation was deleted. The bill as it now stands, demonstrates a legislative intent to construe that provision as retroactive.”
As stated in Abelson v. Abelson (59 Misc 2d 172, 178, supra): “From this disparate treatment of the 1 non-fault ’ grounds, it is claimed that there emerges a clear intent to give subdivision (5) of section 170 retroactive application.” This route to the legislative mind was first taken in LeClaire v. LeClaire (supra), followed in Frischman v. Frischman (supra), and adopted in Adelman v. Adelman (supra). Reliance upon this memorandum, assuming without conceding that it is entitled to such weight, as a competent and probative declaration of the legislative intent as to subdivision (5) is misplaced in my opinion.
The flaw in this approach was first judicially unveiled in Abelson v. Abelson (supra, p. 178) where Mr. Justice L. Kingsley Smith asserted that ‘ ‘ the view expressed in the legislative memorandum loses sight of the fact that it is not the legislative intent in 1968 which is to be sought, but rather the legislative intent in 1966. Moreover, the modifications in the language of subdivision (5) of section 170, effected by the 1968 amendment, did not deal with the question of retrospective application of the statute.”
It must be borne in mind that this memorandum was prepared and published in connection with the 1968 amendments and not with the 1966 enactment. By the 1968 amendments the limiting language of 1 ‘ on or after August first, nineteen hundred sixty-six ” was added to subdivision (6). In thus amending subdivision (6), whether the 1968 Legislature carried out the intent of the 1966 Legislature is really insignificant or irrelevant. What is controlling is that by their amendment they clearly made it prospective in application, and in clear and unambiguous language stated their intent. The fact that they may have believed that the amendment effectuated the intention of the *351 1966 body is of no moment because it is their express intention as to this subdivision which matters.
Although similar language had been proposed for subdivision (5) it was not adopted. The sole changes in this subdivision were to add the words ‘ ‘ or judgment ’ ’ in three places and to substitute “ substantially ” for “ duly ”, so that subdivision (5) now reads as follows: “ (5) The husband and wife have lived apart pursuant to a decree or judgment of separation for a period of two years after the granting of such decree or judgment, and .satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such decree or judgment. ’ ’ It should be noted that the legislative memorandum states that “ The bill as it now stands, demonstrates a legislative intent to construe that provision as retroactive.” (Emphasis supplied.)
In this court’s view the 1968 amendments to subdivision (5) were not tantamount to a new enactment or a re-enactment of that section, as was the amendment to subdivision (6), and except for the technical amendments subdivision (5) was the same as enacted by the 1966 Legislature. Thus it remained the creature of that body and was not the product of the 1968 Legislature merely because of the form in which these technical amendments were accomplished. I am aware of the statement in Kaplan v. Kaplan (supra) on this point but as I indicated before, since subdivision (5) was not before the court in that matter, it should not be binding or controlling here.
The power of the 1968 Legislature to legislate does no encompass the function to instruct the public or the courts as to what a prior Legislature, in this case the 1966 body, intended either expressly or sub silentio. The function of a Legislature is to make laws, not to construe them or the intent of other Legislatures. If the 1968 Legislature intended subdivision (5) to be applied retroactively, they had the power and the right to amend it as clearly and specifically as it did subdivision (6), and by such an amendment to have expressly declared its intention.
Having read the same language of the same statute as my colleagues have done, with the help of the same signposts that mark — however unclearly and uncertainly — the route to the legislative mind, and applying the general rules of statutory construction, I have concluded that the Legislature of 1966 did not intend retroactive application of subdivision (5). Hntil such time as an appellate court directly determines this issue to the contrary or, of course, until such time as the current or some future legislative body re-enacts this statute and specifically states that it is to be effective retroactively, I shall adhere to *352 my interpretation of the statute and apply subdivision (5) prospectively only, regardless of whether the divorce action is initiated by the innocent or guilty party.
Whether this interpretation or conclusion or that of my colleagues is the correct one must ultimately be decided by the appellate courts. I believe that the inference as to legislative intent which I have drawn is as strong and reasonable, if not more so, than the contrary one. Furthermore, it is in accord with the limitation placed by the 1966 Legislature on its own liberalization of the divorce laws. The introduction of the “non-fault ” ground for divorce into the laws of this State has been attributed to a recognition of certain “ dead marriages ”, whose lifeless state has been substantiated by the fact that the spouses have lived apart for the requisite statutory period. Whether or not one agrees in principle with this introduction of a “ non-fault ’ ’ ground into a divorce law, it would seem that voluntary living apart by a husband and wife for a stated period, without the benefit or formality of a decree or written agreement, is equally as reflective of a “ dead marriage ” as is a separation by decree or written agreement.
The failure of the Legislature to qualify such ‘ ‘ living apart ’ ’ —without a decree or written agreement — as a new ground is indicative of a legislative intent against greater liberalization of the grounds for divorce than it expressly stated. The interpretation of subdivision (5) as having retroactivity is a liberalization of the legislative intent which is not consistent with the failure to include this additional ‘ ‘ non-fault ’ ’ ground.
The failure of the Legislature to give retroactivity to subdivision (6) which allows divorces only on the basis of separation agreements entered into on or after August 1, 1966, is inconsistent with the conclusion that the Legislature intended retro-activity for subdivision (5). If the policy underlying our divorce law is a sound one, it would require that both conversion grounds be treated the same as to retroactivity. Sociologically it is very difficult to defend a policy which gives recognition retroactively to “ dead marriages ” reflected by a separation decree but does not give similar recognition to ‘ ‘ dead marriages ” which have been formalized by separation agreements prior to August 1,1966, and which completely ignores the “dead marriages” of parties who have been separated for years without the formality of either a written agreement or a judicial separation decree. The possibility of fraud may explain the exclusion of this latter type of “ dead marriages ” but does not explain the limitation on ‘‘ dead marriages ’ ’ represented by separation agreements.
*353 It is noteworthy that the Legislature was careful to provide that the two-year waiting period specified in both subdivisions (5) and (6) could be computed from September 1, 1966, but not before. This had the effect of starting the two-year period one year prior to the effective date of the statute. The question naturally arises: "Why this concern with a relatively short period of one year, if we are now to impute to the Legislature an intention to go back unlimited years in qualifying separation decrees as a basis for starting the two-year period?
It will not be amiss at this point to note that retroactivity so far as subdivision (6) is concerned had a built-in limitation from the very beginning. Chapter 254 of the Laws of 1966, was passed on April 27, 1966, to take effect September 1, 1967, with the two-year waiting period not to start before September 1, 1966. Even in its original version, it always required filing the agreement within 30 days after its execution. There were, therefore, no large body of separation agreements extant to which it could apply. Nobody would have had any occasion to attempt to file an agreement with a County Clerk prior to the law’s passage, and it is doubtful that the various clerks would have accepted any for filing prior to September 1, 1966. So when the Legislature in the 1968 amendment provided that an agreement could have been signed on or after August 1,1966, at most it was adding one month of retroactivity and in a real sense not even that, since by 1968 no one could turn the clock back to take advantage of the amendment. I have never seen any statistics to show how many agreements, if any, were accepted for filing by the County Clerks throughout the State during the month of August, 1966. If not nonexistent, they must have been very few.
On the other hand subdivision (5) has no such built-in limitation. If given full retroactivity by judicial construction it will apply to every outstanding decree without limit of any kind, unless the general 10-year equity Statute of Limitations is called into play. Section 210 of the Domestic Relations Law, which contains a five-year Statute of Limitations on actions for divorce, excepts subdivisions (2), (5) and (6) of section 170 from its operation.
I cannot conceive that the Legislature intended to lift the lid on this Pandora’s box in this casual, unthinking fashion, while at the same time concerning itself with this minute problem relative to subdivision (6) discussed above.
On the basis of the legislative history of the 1966 Divorce Reform Law and in the absence of a clear expression of intention, and viewing the statute as substantive rather than *354 remedial, the conclusion that subdivision (5) as enacted in 1966 was to be construed only as prospective is more in accord with the classical notion of statutory construction because it does not involve making the law. Under the guise of determining legislative intent, courts should not undertake to judicially rewrite the statute, or a portion of it, so as to do what the 1966 and 1968 Legislatures have so clearly refused or avoided doing.
Judicial law-making should especially be avoided when it involves a statute which has been described by a member of the very Legislature which enacted it in 1966 as “ a hodgepodge of inconsistent, incongruous, illogical, ill-considered and perhaps unconstitutional provisions.” (An Analysis of the Defects and Deficiencies in A. I. 5836, A. P. 6917, commonly called the 1966 Divorce Bill, by Assemblyman Robert M. Blakeman, May 6, 1966). The dangers inherent in judicial revision of this statute have already been demonstrated by the divergent conclusions and the lack of uniformity and unanimity already displayed in the decisions dealing with only one portion of it. The uncertainty and confusion which is inevitable from these results will certainly not buttress the public’s confidence in the courts as a stabilizing force in our society.
The revision which this statute, including subdivision (5) thereof, needs is a task which should be undertaken by the Legislature and not by the courts, particularly in an area which is completely .statutory, as divorce is, rather than common law. Insofar as subdivision (5) is concerned, the simple addition of words such as “on or after” or “on or before ” the date intended would solve the mystery as to whether the Legislature intended the subdivision to be applied prospectively or retroactively.
Hopefully the Legislature will respond to the need for a clear and express declaration of its intention with respect to the new nonfault ground, since this is a matter of considerable magnitude involving as it does the many thousands of separation decrees which have been granted in past years through the State. Until this issue is clarified by legislation, the public will be subjected to the unnecessary uncertainty which now envelops this area of the law and to greater legal expenses than they had been given to expect with the advent of the reform and liberalization of our divorce laws.
For all of the reasons hereinabove stated, I hold that the present action cannot be maintained and the complaint is dismissed. No award for counsel fees is made under the circumstances.