JACKIE GLEASON, Respondent, v. GENEVIEVE GLEASON, Appellant.
ELI GOLDSTEIN, Appellant, v. BEATRICE GOLDSTEIN, Respondent.

First Department, July 1, 1969.

*Vincent J. Malone* of counsel (*Angelo A. Maurino* and *Peter J. Kiernan* with him on the brief; *Parker, Duryee, Zunino, Malone & Carter,* attorneys), for appellant in first above-entitled action.

*Richard G. Green* (*Shirley Fingerhood* and *Veronika Kraft* with him on the brief), attorney for respondent in first above-entitled action.

*Paul J. Goldberg* of counsel (*Lewis Becker* with him on the brief; *Davis & Cox,* attorneys), for appellant in second above-entitled action.

*Irving I. Erdheim* of counsel (*Leonard C. Shalleck, Michael F. Erdheim* and *Milton P. Falk* with him on the brief; *Erdheim & Shalleck,* attorneys), for respondent in second above-entitled action.

EAGER, J. P. There is presented on these appeals the common question of law whether subdivision (5) of section 170 of the Domestic Relations Law should be applied retroactively to authorize a divorce on the basis of a living apart of the parties pursuant to the terms of a judgment of separation rendered prior to the effective date of the Divorce Reform Law.

In Gleason, the parties, married in 1936, entered into an agreement of separation on June 16, 1954, and, thereafter, on June 22, 1954, a judgment of separation was rendered and entered in favor of the wife and against the husband on the ground of abandonment and nonsupport. The judgment approved, ratified and confirmed the separation agreement. The husband brought this present action of divorce in October, 1968, alleging that two years had elapsed since the said judgment of separation was entered; that the parties had lived separate and apart since the rendition of the judgment; and that the husband has in all respects complied with the terms and conditions of the judgment. The wife, as a defendant in this divorce action, moved to dismiss the complaint for insufficiency and on the ground of validity as a matter of law of certain defenses, and the plaintiff husband cross-moved to strike certain defenses in the wife's answer, including her allegations that subdivision (5) of section 170 was not constitutionally and legally applicable as a basis for the action. Special Term denied the wife's motion and granted the husband's cross motion, and the wife appeals.

In Goldstein, the parties were married in 1944 and a judgment of separation was rendered on May 17, 1960 in favor of the wife, decreeing separation on the ground of the husband's failure and refusal to support the wife and the children of the marriage. In September, 1968, the husband brought this action for divorce, alleging that the plaintiff and defendant had lived apart continuously since the rendition of said judgment of separation and that the plaintiff has substantially performed all of the terms and conditions of said judgment. On the motion of the wife, the defendant in this divorce action, Special Term has rendered an order dismissing the complaint and the plaintiff husband appeals.

Thus, in these two cases, we have inconsistent decisions on the question of whether a decree of separation, rendered prior to the effective date of the Divorce Reform Law, may be converted into a judgment of absolute divorce on the basis of the living apart of the parties pursuant to such decree. In fact, the conflicting reasoning of the Justices at Special Term in these cases is merely representative of the divergent views expressed at nisi prius by the courts throughout the State.

The pertinent statute (Domestic Relations Law, § 170) reads:

" An action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage on any of the following grounds:

" (5) The husband and wife have lived apart pursuant to a decree or judgment of separation for a period of two years after the granting of such decree or judgment, and satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such decree or judgment."

Although, as literally read, the statute in its general wording could be understood to apply retroactively in the cases of pre-existing judgments of separation, we conclude that such a construction is neither required nor authorized.[*] " Even where the words are so general and broad as in their literal sense to comprehend existing cases, they must yet be construed as applicable only to such as may thereafter arise, unless the intention to embrace all is plainly and unequivocally expressed, and if all the language of a law can be satisfied by giving it a prospective operation only, it should not apply retrospectively." (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 51, pp. 67–71.) In accordance with the general rule, this statute should " not be given a retroactive effect when it is capable of any other construction." (*Walker* v. *Walker,* 155 N. Y. 77, 81.)

The legislative intent controls as to whether the statute is to be given a retroactive application; " ' words ought to be made subservient to the intent, not contrary to it.' " (*Matter of Young* v. *Gerosa,* 11 A D 2d 67, 74.) " It is a settled rule of statutory construction that the provisions of a statute will not be applied retrospectively where they are capable of any other construction unless the intent of the Legislature to the contrary clearly appears (*New York & Oswego Midland R. R. Co.* v. *Van Horn,* 57 N. Y. 473, 477 ; *Walker* v. *Walker,* 155 N. Y. 77, 81)." (*Waddey* v. *Waddey,* 290 N. Y. 251, 254.)

The words not being decisive on the question of legislative intent, we may review and consider legislative history and documents, but, here, the available data, as reviewed in the decisions and law notes, is confusing and indecisive. (See, e.g., *Zientara* v. *Zientara,* 59 Misc 2d 344, revd. 32 A D 2d 822; *Yoli* v. *Yoli,* 55 Misc 2d 416; also, the Conversion Ground for Divorce in New York by Henry Foster, Jr. and Doris Freed, N. Y. L. J., April 30, May 1 and May 2, 1969.) Certainly, we may not arrive at a conclusion on the basis of speculation as to the reasons why the 1968 Legislature did not act upon proposed

---

[*] This conclusion was reached and this opinion was written prior to the release of the decisions in the Second Department on June 18, 1969 in *Zientara* v. *Zientara* (32 A D 2d 822) and *Schacht* v. *Schacht* (32 A D 2d 201). We have considered and reviewed such decisions but adhere to our conclusions based on the reasoning in this and the concurring opinion.

legislation which would have expressly limited the application of subdivision (5) to a judgment or decree of separation existing on or after September 1, 1966. Legislative inaction is but a "weak reed upon which to lean in determining legislative intent." (*Flanagan* v. *Mt. Eden Gen. Hosp.*, 24 N Y 2d 427, 433.) In any event, it is the legislative intent of 1966 rather than the intent of the Legislature in 1968 that should control the determination here. (See *Abelson* v. *Abelson*, 59 Misc 2d 172; *Zientara* v. *Zientara, supra*; cf. *Schacht* v. *Schacht*, 32 A D 2d 201.)

Where there is ambiguity in a particular legislative enactment and in the recorded legislative data appertaining thereto, a reference to the legislative policy in relation to the subject matter of the statute may be helpful in determining legislative intent. Where a statute has long expressed the legislative policy in a particular area, it may be assumed that a substantial amendment of its terms, where representing a change in such policy, was intended to be confined to a wholly prospective operation. In this connection, we know that, as a matter of settled public policy, the State looks with favor upon the continuance of the marriage relation and we know that the legislative policy, long adhered to, was to confine the granting of an absolute divorce to the one ground of adultery. It was considered in the public interest not to permit the severing of the marital ties on the grounds of desertion, cruelty or incompatibility. (See 16 N. Y. Jur., Domestic Relations, § 909.) Thus, the 1966 statute represents a drastic change in legislative policy in the matter of divorce and, therefore, there is every reason for regarding it as coming within the general rule that statutes shall not operate retroactively unless the wording thereof expressly so requires.

It may be argued that it is contrary to the policy initiated by the new divorce law to arrive at a construction of subdivision (5) that provides no relief to the many spouses who have been living apart pursuant to separation judgments granted prior to the enactment of the new law. It is argued that in many such cases the marriage is clearly "dead" and that it is inequitable and discriminatory to deny a spouse to such a marriage the same rights which would follow in a case where there is a living apart pursuant to a judgment of separation rendered following the effective date of the new law. These arguments, however, as a ground for inferring a legislative intent to give subdivision (5) of section 170 a retroactive application appear unconvincing when it is noted that the Legislature has expressly provided that subdivision (6) of the same

section shall be limited to apply in the cases of separation agreements entered on or after August 1, 1966. " If the policy underlying our divorce law is a sound one, it would require that both conversion grounds be treated the same as to retroactivity. Sociologically it is very difficult to defend a policy which gives recognition retroactively to ' dead marriages ' reflected by a separation decree but does not give similar recognition to ' dead marriages ' which have been formalized by separation agreements prior to August 1, 1966, and which completely ignores the ' dead marriages ' of parties who have been separated for years without the formality of either a written agreement or a judicial separation decree. The possibility of fraud may explain the exclusion of this latter type of ' dead marriages ' but does not explain the limitation on ' dead marriages ' represented by separation agreements." (*Zientara* v. *Zientara,* 59 Misc 2d 344, 352, *supra,* revd. 32 A D 2d 822.)

Nor is there firm support for the argument that the statute should apply to pre-existing judgments of separation because it is remedial in its effect. Clearly, the statute is not remedial in the sense justifying an inference that the Legislature intended retroactive operation. (See *Abelson* v. *Abelson,* 59 Misc 2d 172, *supra.*) In creating the remedy of divorce in cases where such remedy did not theretofore exist, it permitted the destruction of rights arising out of a marital contract. " Where the effect of the statute ' is to create a right of action ' which did not previously exist, it is presumed that the statute was intended to have only prospective application. (See *Jacobus* v. *Colgate,* 217 N. Y. 235, 240–242.)" (*Longines-Wittnauer* v. *Barnes & Reinecke,* 15 N Y 2d 443, 453.) " Statutes are generally to be construed as prospective only, even if remedial, where a new right is established ". (*Lewittes & Sons* v. *Perlow,* 254 App. Div. 94, 95; see, also, *Feiber Realty Corp.* v. *Abel,* 265 N. Y. 94.)

The statute in fact " represents a far-reaching substantive change in the law " (*Abelson* v. *Abelson,* 59 Misc 2d 172, 180, *supra*). A judgment of separation, as well understood prior to the enactment of the Divorce Reform Law, merely effected a modification and suspension in certain respects of the marriage relations, duties and obligations. Notwithstanding such a judgment, the marital contract continued in existence and the obligations incident thereto were binding upon the parties except as modified by the decree. The decree left open the opportunity for reconciliation of the parties with a presumption of full marital relations and the re-establishment of the family

unit. Thus, a judgment of separation was in a sense an exemplification of the policy of this State, namely, that the marital relation, with the possibility of reconciliation of separated spouses, be continued as long as possible. (See 16 N. Y. Jur., Domestic Relations, § 823.)

Furthermore, many rights and obligations incident to the marital ties generally remain following a judgment of separation, including rights and obligations with reference to support and maintenance of a spouse, testamentary rights and restrictions including the right of a nonguilty spouse to elect against the last will and testament of the other, health insurance and pension rights, and rights under social security and immigration laws.

The Legislature is presumed to have known that, at the time of the enactment of the new law, there was in existence a great number of separation judgments which were then outstanding of record throughout the State. '' If it was the purpose and intent to attach so new and radical an effect to the many existing separation judgments, such a determination should come from the Legislature in clear and unmistakable language and not as the result of judicial construction on the basis of legislative silence. (McKinney's, Statutes, §§ 74 and 153; Crawford, Construction of Statutes [1940], § 168, p. 268.) Furthermore * * * there is an inherent injustice, aside from constitutional considerations in grafting on existing separation judgments the unforeseen legal consequences which retroactive application of subdivision (5) of section 170 would necessarily entail. ' But considerable care should be exercised in order that a judgment secured before the enactment of the regulatory statute may not be impaired, destroyed or extended. In fact, no statute should receive a construction which will impair an existing judgment or enlarge or validate it in any way. As a result, in case of doubt, statutes affecting judgments should be regarded as applying to subsequently secured judgments only.' (*Crawford, supra,* § 293, pp. 591–592).'' (*Abelson* v. *Abelson,* 59 Misc 2d 172, 180–181, *supra*; see, also, 82 C. J. S., Statutes, § 416; *Livingston* v. *Livingston,* 173 N. Y. 377; *Feiber Realty Corp.* v. *Abel, supra*; *Matter of Greene,* 55 App. Div., 475, 482, affd. 166 N. Y. 485, 492.)

To apply subdivision (5) in the case of pre-existing judgments of separation amounts to the automatic broadening of the effect of such judgments and tends to destroy rights thereunder. Such retroactive application would confer authority upon the courts to dissolve a marriage without the consent of a nonguilty party who obtained the judgment of separation

and without proof of any breach of the marital contract on his part. It is questionable whether the State may constitutionally do this. (See *Church* v. *Church,* 58 Misc 2d 753; *Shapiro* v. *Shapiro,* 59 Misc 2d 412.)

Here, the Legislature, in enacting a new divorce law, was looking to the future. By the terms of its enactment, the maintenance of an action for divorce was authorized where the spouses have lived apart for a period of two years "after the granting of" the judgment of separation. These words import a future happening—the "granting" of a judgment of separation as an event which, occurring in the future, would serve as a condition precedent to the obtaining of a divorce on a ground of a mere living apart of the parties. The existence of a separation judgment was made an essential element of the "cause" or ground for a divorce; absent such a judgment (or a separation agreement), a living apart of spouses does not furnish a basis under the new law for a divorce. In providing for a law effective prospectively, we know that there was no intent on the part of the Legislature to legislate into existence divorces on the basis of prior events. Thus, we should apply the universal rule, that a "statute declaring the causes for which divorces may be granted is ordinarily to be given a prospective operation only and does not authorize a divorce for a specified cause which occurred before the statute was enacted." (27A C. J. S., Divorce, § 16; 19 C. J., Divorce, § 62, and many cases cited in the notes.)

If the Legislature intended that the new law should apply in the cases of existing judgments of separation, it could have easily so provided, and its failure to do so is significant. The grounds for a divorce of a husband and wife must be founded on statutory provision and the court may not implement the law by supplying a provision for a particular retroactive application not specified by the Legislature. Furthermore, the application of the law to pre-existing judgments of separation would require implementation to provide standards and guidelines under which a nonguilty spouse may be protected from or compensated for the loss of still existing marital rights (see Foster & Freed, N. Y. L. J., *supra; Taplinger* v. *Taplinger,* 55 Misc 2d 103; *Bessowitz* v. *Bessowitz,* N. Y. L. J., June 3, 1969, p. 19, col. 1; *Di Russo* v. *Di Russo,* 55 Misc 2d 839); and this, particularly, is a legislative function. In this connection, the "court may not substitute itself for the Legislature merely because the Legislature has failed to act." (Cf. *Matter of Spillane* v. *Katz,* 25 N Y 2d 34, 37.) In any event, here, the purpose of the new legislation may be fulfilled without giving

subdivision (5) the contended for retroactive effect and, thus, the law should not be construed to so operate.

In Gleason, the order, entered March 13, 1969, should be reversed, on the law, with costs and disbursements, and defendant's motion to dismiss complaint granted. In Goldstein, the order, entered March 31, 1969, and the judgment, entered April 11, 1969, should be affirmed, with costs and disbursements.

McNALLY, J. (concurring). I concur, but would add the following grounds:

In two actions for divorce, defendant wife Gleason appeals from the order denying her motion to dismiss the complaint and granting plaintiff's cross motion to dismiss the first and second affirmative defenses, and plaintiff husband Goldstein appeals from the dismissal of his complaint. On June 22, 1954 and May 17, 1960, defendants respectively were awarded decrees of separation. Predicated thereon, plaintiffs, defendants in the separation actions, seek divorces under subdivision (5) of section 170 of the Domestic Relations Law (added by L. 1966, ch. 254). Subdivision (5) enables a divorce on the ground that the parties have lived apart pursuant to a judgment of separation for the period of two years thereafter.

An action for divorce also may be maintained under subdivision (6) of section 170 if the parties have lived apart pursuant to a separation agreement made after August 1, 1966. The other four subdivisions of section 170 set forth grounds for divorce based on defendant's fault.

Subdivision (6) is prospective in its application. Plaintiffs contend, however, subdivision (5) is retroactive, although it does not so provide. To the extent that subdivision (5) retroactively applies to defendants, it offends against the equal protection clause of the United States and New York State Constitutions (U. S. Const., 14th Amdt., § 1; N. Y. Const., art. I, § 11), and deprives defendants of their inchoate property rights and status rights conferred by the judgments of separation. (*Livingston* v. *Livingston*, 173 N. Y. 377, 383; *Germania Sav. Bank* v. *Village of Suspension Bridge*, 159 N. Y. 362.)

Section 170 provides two nonfault grounds for divorce. They are set forth in subdivisions (5) and (6). That grounded on a separation agreement (subd. [6]) is based on the consent of the parties given subsequent to its enactment. Thereby the parties to the agreement impliedly consent to the divorce thereafter made possible by the lapse of two years. The provision for divorce based on a prior separation decree (subd. [5])

in these cases obtained by defendants imposes the divorce on them to their detriment. In addition, subdivision (5) retroactively bestows on plaintiffs the right to a divorce which they did not have prior to its enactment and would not have been available to plaintiffs but for the decrees obtained by defendant wives based on plaintiff husbands' misconduct. Thus, defendants, without their consent, are sought to be saddled with divorces they did not and would not seek if they had been apprised of their exposure to involuntary divorces at the time they sought and obtained their separation decrees. We cannot reasonably presume the Legislature, in the absence of clear and explicit language, ever intended such a harsh and unjust result. Thus, subdivision (5) is palpably discriminatory as to defendants who have been awarded separation decrees in failing to make available to them the right to consent or object to the divorce. Subdivision (5) also impairs the prior separation decree in that it makes it available to the guilty party as a sword against the nonconsenting successful party. (*Livingston* v. *Livingston,* 173 N. Y. 377, *supra.*)

Markewich and Nunez, JJ. (dissenting). We dissent, and, in accordance with the clear mandate of subdivision (5) of section 170 of the Domestic Relations Law, would affirm in Gleason and reverse in Goldstein, sustaining the validity of the complaint in each instance.

The facts and the applicable statute, as well as summaries of the holdings at Special Term, have been fairly set forth in the opinions of the majority and require no repetition here. Our disagreement is with the conclusions derived therefrom. " None of us ought to make the parties' case better than the law has made it." (*The Bankers' Case,* 14 Howell State Trials 39, 45, Somers [1700]), but this is what the majority has done. " Under the doctrine of separation of powers, it is fundamental that the courts may not extend, enlarge, or expand legislation. The courts should not attempt to read into a statute words or provisions or meanings which are not there. * * * Rules of construction are invoked only when the language used in a statute leaves its purpose and intent uncertain and questionable, and not for judicial enlargement of or extension of the legislative design or intent. A court may not read into statutes what the legislature intended should be left out, nor read into a statute words not used by the legislature which would defeat the purpose of the statute in part." (56 N. Y. Jurisprudence, Statutes, § 107, pp. 584–585, and the numerous cases there cited.) This is precisely what the majority has done.

The complaint in each case sets forth in accurate paraphrase the language of the statute (Domestic Relations Law, § 170, subd. [5]), pursuant to which relief is sought by way of judgment of divorce. For the purposes of the motion to dismiss for insufficiency, the allegations must be deemed true. So read, each complaint clearly sets forth a cause, pleaded pursuant to the statute, i.e., that the parties " lived apart pursuant to a decree or judgment of separation for a period of two years after the granting " thereof and that " plaintiff * * * has substantially performed all the terms and conditions " thereof. It is beyond dispute that each plaintiff has followed the time-honored, usually unassailable method of assuring a sufficient pleading by " pleading the statute." The difficulty is that the majority has imported into the statute a nonexistent restraint upon its thrust: a plaintiff may not, it is claimed, employ as the predicate judgment of separation, sought to be converted into divorce, one that preceded in time the effective date of the statute. In short, it is said, the statute is prospective only in applicability. Much is said about legislative intent and surrounding circumstances, but not a word is said to contradict the statute's clear and unambiguous words. Indeed, if anything at all, the statute's brief history points in the opposite direction.

Subdivision (5) of section 170 (conversion of separation judgment into judgment of divorce) and subdivision (6) (conversion of separation agreement into divorce judgment) were enacted simultaneously in 1966 (L. 1966, ch. 254); the only limitation of time of any kind then imposed was that, in neither case, could the two-year period of living apart specified in both subdivisions " be computed to include any period prior to September first, nineteen hundred sixty-six " (L. 1966, ch. 254, § 15). In 1968, subdivision (6) *alone* was amended to limit its conversion provisions to agreements of separation " subscribed and acknowledged on or after August first, nineteen hundred sixty-six " (L. 1968, ch. 700). The memorandum in the 1968 Report of the Joint Legislative Committee on Matrimonial and Family Laws to the Legislature of the State of New York (March 31, 1968, p. 55) recites legislative intent as to the amendment: " The living apart ground for divorce based upon an agreement of separation is being amended to recite that the agreement must be one subscribed and acknowledged on or after August 1, 1966. This language is being added in order to clearly show that there is no legislative intent that this section have retroactive effect." Then going on to speak of subdivision (5): " As originally introduced, this bill would also have provided

that the separation ground for divorce based upon a judgment or decree of separation must have been one granted on or after September 1, 1966. By amendment, this limitation was deleted. The bill as it now stands, demonstrates a legislative intent to construe that provision as retroactive.''

The concurring opinion for the majority adds other grounds to a claim of restriction to prospectivity in application. The claim that subdivision (5) of section 170 is an unconstitutional deprivation of appellants' right of due process of law is without merit. The section does not violate that constitutional guarantee. Apparently, appellants' greatest concern is that conversion of the separation decree into divorce at the behest of the guilty husbands will deprive the wives of rights to inherit as surviving spouses. However, there is no such right entitled to the protection of the due process clause. (*Simons* v. *Miami Beach Nat. Bank,* 381 U. S. 81.) As Judge Korn stated at Special Term:

'' There are no vested rights to inherit. At best one spouse has a mere expectancy in the estate of another.

'' Additionally, there is no ' vested ' right that a spouse has arising either out of contract or out of the marital status to remain married to his or her partner ''.

Due process protection is afforded only to vested property rights, not to mere expectations. (*Irving Trust Co.* v. *Day,* 314 U. S. 556, affg. *Matter of McGlone,* 284 N. Y. 527; *Randall* v. *Kreiger,* 23 Wall. [90 U. S.] 137.) '' Since rights of descent and distribution of a decedent's estate are created by the law of the State, the State may change or take away such rights though it may not take away property which had vested by virtue of such rights.'' (*Matter of McGlone, supra,* p. 533.) And, since the State may limit, change or abolish rights of succession to the property of a living person directly, it certainly may do so by providing new grounds for divorce. And, as to those rights which have vested, for instance as provided in the Gleason situation for the payments to the wife to continue into the future, there will be no interference whatever by a decree of divorce.

The concurring opinion speaks of unconstitutional discrimination. In so doing, the majority itself discriminates as between conversion of judgments and conversion of agreements by raising, though the words are not used, the same concept of '' fault '' and '' guilty spouse '' stressed as a make-weight in the Goldstein opinion at Special Term. The Legislature never intended to make '' fault '' a criterion by which the right of conversion divorce is to be measured. Indeed, a bill to that end failed of passage in the 1969 session. (See Association of Bar of City of N. Y., Committee on State Legislation, Bulletin No. 5,

March 10, 1969, pp. 231–233.) '' The court may not substitute itself for the Legislature merely because the Legislature has failed to act.'' (*Matter of Spillane* v. *Katz*, 25 N Y 2d 34, 37.) Further, it is interesting to observe that the law school professor assigned as reporter to the topic ''Matrimonial and Family Law '' at the 1967 Conference of New York State Trail Judges (Crotonville) Thirteenth Annual Report N. Y. Judicial Conference, 1968, p. 115; N. Y. Legis. Doc., 1968, No. 90, p. 115, participated in by approximately one hundred trial, and some appellate Judges, from all over the State, wrote: '' The new 'living apart ' or conversion grounds next received the panel's attention in terms of the following specific question: is the right to transform a judicial separation into a divorce available equally to the innocent spouse and the guilty spouse in the underlying separation action? There was a consensus that this right of conversion is not under existing law limited to the innocent party in the separation action.''

The 1966 '' Committee Report on Recommended Amendments to the Divorce Reform Law of 1966 '' of the Special Committee on Matrimonial Law of the Association of the Bar of the City of New York speaks, under the heading '' Inheritance Rights of Divorced Innocent Spouse '' (Record of Assn. of Bar of City of N. Y., vol. 21, [1966], p. 598), only of the necessity of desired legislation to protect the property rights of such a spouse, stating the problem: '' Under the provisions of Section 170(5) of the Act an action for divorce may be maintained by a husband or wife where they have lived apart pursuant to a decree of separation for a period of two years after the granting of such decree and satisfactory proof has been submitted by the plaintiff that he or she has duly performed all the terms or conditions of such decree. The operation of this provision may produce an inequitable result in certain cases by depriving a faultless spouse who has procured a judgment of separation without any desire of divorcing his or her spouse of the right to share in the other spouse's estate.'' The report goes on to recite certain aspects of the problem, incidentally repeating specifically that the faultless spouse may well be the losing defendant in the conversion divorce action, and recommends remedial action, not by way of restricting the right to sue in a conversion action to the faultless spouse, but assuring her property rights, particularly under the Decedent Estate Law. Obviously, fault is not considered a factor in the right to conversion divorce. See, to the same effect, The Judicial Conference's 1967 '' Memorandum on Recommended Changes in the ' New Divorce Law ' '', referring to chapter 254 of the Laws of 1966 (p. 29 *et seq.*).

The majority's concurring opinion also protests what it terms unconstitutional discrimination against those who brought separation actions prior to the change in law because the eventual result of conversion divorce might not be in accord with their original intentions. There is no right of contract involved here and the State obviously has the power, here exercised, to change its policy for the common good. Nor, actually, is there any greater discrimination, if there is any at all, than that which is accepted as a matter of course in the advantages generally accorded by matrimonial laws to women over men.

Finally, and without yielding to the temptation to excerpt generously therefrom, we can do no better in evaluating the position taken by the majority than to point to the unanimous opinion of our brethren in the Second Department, per BENJAMIN, J., to the same effect as our dissent (*Schacht* v. *Schacht*, 32 A D 2d 201).

In sum, the complaints were properly drawn pursuant to a constitutional, clear and unambiguous statute, and should be sustained.

McNALLY and McGIVERN, JJ., concur with EAGER, J. P., in opinion by McNALLY, J.; MARKEWICH and NUNEZ, JJ., dissent in opinion.

Order in the first above-entitled action entered March 13, 1969, reversed, on the law, with $50 costs and disbursements to the appellant, and defendant's motion to dismiss the complaint granted; the Clerk is directed to enter judgment in favor of the defendant dismissing the complaint with costs.

Order in the second above-entitled action entered on March 31, 1969, and judgment entered thereon, affirmed, with $50 costs and disbursements to the respondent.