Lester Holtzman, J.
This is an action for divorce pursuant to subdivision (5) of section 170 of the Domestic Relations Law. The parties were married in 1937 in Vienna, Austria. There is one child of this union, born in 1949. On August 23, 1965, the instant defendant commenced a separation action *804 against the instant plaintiff on the ground of abandonment and a decree granting separation was entered on July 27, 1966. This action for divorce was commenced more than two years after the entry of the separation decree and after the effective date of the new sections to the Domestic Relations Law.
Defendant moves to dismiss the complaint. The section pursuant to which the divorce is being sought provides that such an action may be maintained by a husband or wife on the ground that: ‘1 The husband and wife have lived apart pursuant to a decree or judgment of separation for a period of two years after the granting of such decree or judgment, and satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such decree or judgment.”
Defendant urges (1) that the Legislature did not intend to apply the statute retroactively to separation decree or judgments granted prior to September 1, 1966; (2) that the statute was not intended for use by the “ guilty ” spouse in the separation action, and- (3) that a retroactive application of the statute renders the statute unconstitutional, as it impairs the obligations of contracts (U. S. Const, art. I, § 10, subd. 1); deprives the defendant of substantial property rights, e.g., inheritance rights, social security rights, (U. S. Const., art. XIV, § 1; N. Y. Const., art. I, § 6) and violates the equal protection clause (U. S. Const., art. XIV, § 1; N. Y. Const., art. I, § 11).
The first point raised is easily determined. The Joint Legislative Committee on Matrimonial and Family Laws, in its memorandum states :
“ The living apart ground for divorce based upon an agreement of separation is being amended to recite that the agreement must be one subscribed and acknowledged on or after August 1, 1966. This language is being added in order to clearly show that there is no legislative intent that this section have retroactive effect.
“ As originally introduced this bill would also have provided that the separation ground for divorce based upon a judgment or decree of separation must have been one granted on or after September 1, 1966. By amendment, this limitation was deleted. The bill as it now stands, demonstrates a legislative intent to construe that provision as retroactive. ” (L. 1968, ch. 700; McKinney’s Sess. Laws, p. 2308; see LeClaire v. LeClaire, 58 Misc 2d 41.)
With respect to the second point raised, this court is cognizant of other Special Term decisions to the effect that the Legislature did not intend “ to reward with a divorce decree the *805 spouse who has, by prior judicial adjudication been determined to have been the ‘ guilty ’ spouse or spouses at fault.” (Church v. Church, 58 Misc 2d 753, 756.) Goldenberg v. Goldenberg, N. Y. L. J., Dec. 4, 1968, p. 17, col. 3, Kings County, Morrissey, J.) The court, however, does not agree with their interpretation. (See, also, Frischman v. Frischman, 58 Misc 2d 208.) In construing statutes the legislative intent “is first to be sought from a literal reading of the act itself * * * and if language thereof is unambiguous and the words plain and clear, there is no occasion to resort to other means of interpretation. But, where, after a reading of the statute, its meaning is still not clear, courts must search for legislative intent in the purpose of the enactment ”. (McKinney’s Cons. Laws of N. Y., Statutes, § 92.)
The statute contains no express limitation to the “ innocent ” spouse of a right of action for divorce founded on a separation decree. To minimize the absence of such a limitation is to do violence to legislative intent. The subsections of section 170 of the Domestic Relations Law authorizing a “ conversion ” divorce based on either a separation agreement or a separation decree weire specifically designed to enable persons to extricate themselves from a perpetual state of marital limbo. The question of fault is not involved. Were “fault” an important factor in the granting of a conversion divorce then in such an action based upon a separation agreement, the court might be forced to go beyond the agreement to first establish “ fault ” and then bar the faulting party. Such an approach, however, cannot be seriously suggested. In every separation agreement or decree there is undoubtedly some element of fault. However, it is generally a failure to agree upon ancillary matters, e.g., financial and property rights, custody and visitation rights, etc., which precipitates court proceedings. A finding of fault by a court in such a proceeding should not forever bar the faulting party from obtaining a divorce.
Subdivision (5) also contains the proviso that in order to secure the divorce satisfactory proof of substantial performance of all the terms and conditions of the separation decree must be submitted by the plaintiff. This language not only envisions, in the case of a successful wife, remaining separated, and in some cases complying with visitation privileges, but also an unsuccessful husband’s concomitant obligations, including the payment of alimony. There is nothing repugnant to the public policy of our State in permitting the unsuccessful spouse in a separation action to obtain a “ conversion ” divorce. To hold otherwise might only serve to force such unsuccessful spouse *806 to seek relief in some other jurisdiction and to continue one of the very evils which the divorce reform law intended and attempted to eliminate.
Although Special Term should ordinarily avoid constitutional questions, avoidance here is impossible. It should be noted at the outset that there is a strong presumption of validity attaching, to a statute which the one challenging it must overcome beyond a reasonable doubt. (See Fenster v. Leary, 20 N Y 2d 309, 314.) Further, a court of original jurisdiction will not declare a statute unconstitutional unless the violation is patent. (Matter of Wood v. Freeman, 43 Misc 2d 616, affd. 24 A D 2d 704; National Psychological Assn. for Psychoanalysis v. University of the State of N. Y., 18 Misc 2d 722, affd. 10 A D 2d 688, affd. 8 N Y 2d 197.) It is the opinion of this court that the statute is not patently unconstitutional. Since, however, retroactive application of this legislation will have such a far-reaching effect on the lives and property of so many persons, a discussion of the constitutional issues is merited. With the exception of the United States Constitution’s proscription of bills of attainder and ex post facto laws, there is no provision in either the Federal or State Constitutions expressly concerned with retroactive legislation. Thus a statute is not rendered unconstitutional merely because it has retroactive effect. The chief restriction upon retroactive remedial legislation is that vested rights cannot be impaired or destroyed.
Does the retroactive application of the instant legislation destroy any vested rights? A vested right has been defined in many ways: as “ an immediate right of present or future enjoyment ” (Pearsall v. Great Northern Ry. Co., 161 U. S. 646; see 16 Am. Jur. 2d, Constitutional Law, § 421); as a ‘ ‘ property interest so substantial in character that its destruction or deprivation cannot be justified by the objectives in view”. (See 9 N. Y. Jur., Constitutional Law, § 246.) Negatively defined, a right is not vested unless it is something more than a mere expectation based upon an anticipated continuation of the present general laws. Nor are rights vested if they are qualified by contingencies (see Addiss v. Selig, 147 Misc. 731, affd. 240 App. Div. 829, revd. on other grounds 264 N. Y. 274, see, also, 9 N. Y. Jur., Constitutional Law, § 246.)
As was stated by Professor Cooley in his treatise on Constitutional Limitations (8th ed., vol. 2, p. 745): “ the term * vested rights ’ is not used in any narrow or technical sense, or as importing a power of legal control merely, but bather as implying a vested interest which it is right and equitable that the government should recognize and protect, and of which the *807 individual could not be deprived arbitrarily without injustice. The right to private property is a sacred right; not, as has been justly said, ‘ introduced as the result of princes’ edicts, concessions, and charters, but it was the old fundamental law, springing from the original frame and constitution of the realm.’ “ But as it is a right which rests upon equities, it has its reasonable limits and restrictions; it must have some regard to the general welfare and public policy; it cannot be a right which is to be examined, settled, and defended on a distinct and separate consideration of the individual case, but rather on broad and general grounds, which embrace the welfare of the whole community, and which seek the equal and impartial protection of the interests of all.”
(See 2 Sutherland, Statutory Construction, § 2205, p. 120.) Moreover, a distinction must be made between statutory privileges and vested rights. A citizen has no vested rights in statutory privileges and exemptions; the State may change or take away rights which were created by the law of the State, although it may not take away property which has vested by virtue of s'aid rights. (See Matter of McGlone, 284 N. Y. 527, affd. sub nom. Irving Trust Co. v. Day, 314 U. S. 556.)
Defendant contends that she is being deprived of her right to inherit from her husband. The right to inherit, however, unless already vested by reason of her husband’s death, is merely contingent. “No one is heir to the living; and the heir presumptive has no other reason to rely upon succeeding to the property than the promise held out by the statute of descents. But this promise is no more than a declaration of the legislature as to its present view of public policy as regards the proper order of succession, — a view which may at any time change, and then the promise may be properly withdrawn, and a new course of descent be declared. The expectation is not property; it cannot be sold or mortgaged; it is not subject to debts; and it is not in any manner taken notice of by the law until the moment of the ancestor’s death, when the statute of descents comes in, and for reasons of general public policy transfers the estate to persons occupying particular relations to the deceased in preference to all others. It is not until that moment that there is any vested right in the person who becomes heir, to be protected by the Constitution. An anticipated interest in property cannot be said to be vested in any person so long as the owner of the interest in possession has full power, by virtue of his ownership, to cut off the expectant right by grant or devise.” (Cooley, Constitutional Limitations, p. 750.)
*808 Defendant’s right to recover old age and survivor’s insurance benefits also is not a vested right. Moreover, a divorce will not always deprive a wife of social security benefits since the Social Security Law makes specific provision for recovery of such benefits by a “ divorced or surviving divorced wife” of 20 years’ duration or a “ surviving divorced mother ”. (U. S. Code, tit. 42, §§ 416, 402.)
It has been argued that the “innocent ” spouse may lose some rights created by her marital status by reason of a divorce pursuant to subdivision (5) of section 170 of the Domestic Relations Law. The court is not persuaded by this argument. In the judgment to be ultimately made, the court must consider all of the equities between the parties and make such directions as to alimony, support, custody, visitation, etc., as justice requires at that time.
Defendant further contends that the section as applied violates the equal protection clause in that persons who have separated pursuant to a decree entered prior to September 1, 1966 may obtain a divorce, while persons who have separated pursuant to an agreement executed prior to that date may not.
In dealing with its own domestic matters the State’s power is extremely broad and its discretion is limited only by constitutional rights and by the doctrine that a classification may not be palpably arbitrary. (Phillips Co. v. Dumas School Dist., 361 U. S. 376.) The court’s approach to an equal protection question is clear:
“ Before a court can interfere with the legislative judgment it must be able to say that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. The legislative judgment as to a classification will be upheld if any state of facts can reasonably be conceived to sustain it, or if the validity of the classification is fairly debatable. The courts are not concerned with the reason which prompted the legislature to make a distinction between one class and another, or with the wisdom of the classification.
“In determining whether a legislative classification is reasonable, for purposes of the equal protection guaranty, the courts do not apply their own judgment as to what is reasonable; it is sufficient that the court is able to see that the legislature could regard the classification as reasonable and proper without doing violence to common sense.” (N. Y. Jur., Constitutional Law, § 295 and cases cited therein.)
With respect to the instant legislation, this court is of the opinion that rational bases exist for the classifications contained *809 in subdivisions (5) and (6) of section 170 of the Domestic Eelations Law. Besides the basic differences between separation decrees and agreements, e.g., the enforcement procedures available, that one may be modified upon a change in circumstances while the other ordinarily may not, there is also the factor that since the separation decree is a matter of court record there would be no possibility of fraud while such a possibility might exist by the predating of separation agreements were persons permitted to obtain a conversion divorce based on a two-year separation under an agreement entered into prior to August 1, 1966. Obviously, this was the purpose of requiring the acknowledgment and filing of separation agreements.
It is the opinion of the court that the retroactive application of subdivision (5) of section 170 of the Domestic Eelations Law does not destroy any vested rights nor does the section violate either the equal protection clause or the proscription of impairing the obligation of contracts and, accordingly, the section as enacted and applied is constitutional. The motion is denied.