opinion of the court
Martin B. Stecher, J.
In this action for a conversion divorce (Domestic Relations Law, § 170, subd [6]) the plaintiff husband moves for summary judgment of divorce. The wife opposes the motion and in her answer asserts four affirmative defenses and counterclaims which essentially allege duress and fraud in the inducement of this agreement.
The separation agreement was executed on March 24, 1980. There is no substantial dispute that, since its execution, the parties have lived separate and apart for more than a year and it is established that the plaintiff has substantially performed his obligations under the agreement.
Prior to the execution of the agreement, Mrs. Ezratty utilized the services of an attorney, a second attorney who acted as consultant to the first, and a certified public accountant. The attorneys for Mrs. Ezratty appeared to have been of the opinion at the time of the execution of the agreement that if Mr. Ezratty truthfully represented his earnings “then the agreement, while not generous, might be within reason.”
*23 It is obvious that throughout the negotiations and to this day, Mr. Ezratty withheld from his wife, her accountant and her attorneys financial information concerning himself and his business in which he was either a proprietor or the sole proprietor (even now I am not informed which). He disingenuously refers to himself as an employee and refers to the vehicles which he and his wife presently drive as cars owned by his employer. The suspicion is fairly well supported that Mr. Ezratty is his own employer.
Mr. Ezratty does not appear to have misrepresented his financial status to his wife. The truth is that he declined to make any financial representations to her other than what his income, as revealed by his tax returns, was. There is no proof whatever that these figures are misrepresented. Mrs. Ezratty’s attorneys advised her not to sign the agreement in the absence of fuller financial disclosure. She signed it nonetheless, she says, because of the extreme emotional strain she was undergoing and the pressures put upon her by her husband who alternately browbeat her and treated her tenderly. (It is clear from the reply affidavit that there, at least, is some truth in Mrs. Ezratty’s description of the parties’ relationship during the negotiating period.)
Were this the ordinary commercial transaction, there is no question that the court would waste little time with Mrs. Ezratty’s protestations. Her counsel were competent and they warned her not to sign the contract. Ordinarily, it is not the function of the law to protect people from their own foolishness. Here, however, we are dealing with a marriage, “a status with which the State is deeply concerned.” (Christian v Christian, 42 NY2d 63, 65). “Agreements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith * * * There is a strict surveillance of all transactions between married persons, especially separation agreements * * * Equity is so zealous in this respect that a separation agreement may be set aside on grounds that would be insufficient to vitiate an ordinary contract” (Christian v Christian, supra, p 72).
“To warrant equity’s intervention, no actual fraud need be shown, for relief will be granted if the settlement is manifestly unfair to a spouse because of the other’s over *24 reaching” (Christian v Christian, supra, p 72). Mr. Ezratty’s income tax returns demonstrated income of about $85,000 a year and the agreement provided Mrs. Ezratty with about $31,000 a year. If that is the sum of it, equity will not intervene. Mrs. Ezratty, however, alleges in conclusory terms that her husband’s business is worth in excess of $1 million, that he drives a $50,000 imported car and provides her, under the terms of the agreement, with a Cadillac automobile both of which are owned by his business and that he has vast business interests which were never disclosed. The difficulty with Mr. Ezratty’s position is that he does not truly deny any of these allegations. Thus, we have a situation where inquiry is warranted into whether the settlement was “manifestly unfair.”
We are then confronted with the question of what is to happen to Mr. Ezratty’s demand for a divorce. The Legislature, in enacting section 170 of the Domestic Relations Law (L 1966, ch 254, § 2), intended to provide no-fault grounds for divorce in the case of dead marriages, recognizing that it was morally and socially desirable to terminate such relationships (Gleason v Gleason, 26 NY2d 28). The purpose of the written separation agreement is not to create ground for divorce but rather to provide evidence that the marriage is at a social end (Christian v Christian, supra, p 70). Thus, in Christian it was possible to grant a divorce following a separation agreement even though the agreement constituted an overreaching by one party entitling the other to be relieved of its terms.
In Christian (supra), however, the contract expressly provided for the severability of its clauses and the court therefore severed the economic issues while granting the divorce. Here, there is no severability clause and it is difficult to ascertain from its language whether the con- ■ tract was intended to be severable or entire.
At least two courts have allowed a divorce without reference to the severability of the clauses of the contract where bona fide issues were raised as to the fairness of its economic terms (Angeloff v Angeloff, 86 AD2d 974; Picotte v Picotte, 82 AD2d 983, mot for lv to app den 55 NY2d 847). The facts of Picotte in many ways parallel ours. There (p 984), Mr. Picotte “consistently refused to fully disclose his *25 financial condition, other than to furnish a copy of the parties’ 1976 joint income tax returns. While such refusal is not tantamount to fraud * * * when coupled with defendant’s lack of knowledge, a plenary trial is warranted on the question of whether fraud existed”. The court does not discuss the severability of the contract clauses.
Neither does the Angeloff court refer to the severability clause discussion of Christian (supra). The court, however, distinguishes between the contract “as evidence of the authenticity and reality of the separation” (Angeloff v Angeloff, 86 AD2d 974, 975, supra) and its economic elements which form the gravamen of Mrs. Angeloff’s attack. “Even if rescission of the agreement was found to be warranted, it would still retain its vitality as providing evidence of the primary basis for a conversion divorce” (86 AD2d, at p 975) particularly where Mrs. Angeloff “is as desirous as defendant to terminate this marriage, albeit on grounds other than conversion” (86 AD2d, at p 975).
Here, too, there is no dispute that the marriage, as a marriage, is at an end. Mrs. Ezratty does not suggest otherwise. She demonstrates no interest in a resumed relationship with her husband. The issues she raises in her charge of fraud are exclusively economic.
I am of the opinion that where, as here, the marriage is dead; where no true fraud is proved, or is really alleged; where the allegations of duress are so insubstantial as to warrant no relief; but where a case is made out that perhaps there was an economic overreaching which deserves the intervention of equity; that irrespective of the presence or absence of the formula language of severability a divorce should be granted and the economic issues severed and tried. In such a continued action, Mrs. Ezratty will be entitled to disclosure to which any litigant is entitled under CPLR article 31, to discover what her husband’s true financial picture was during the negotiation and execution of the agreement (Picotte v Picotte, supra).
The intention of the Legislature would be frustrated and the interests of neither society nor the parties served by requiring these litigants to remain in a marital state.
Accordingly, a judgment of divorce shall be entered pursuant to the provisions of subdivision (6) of section 170 *26 of the Domestic Relations Law and the defendant’s counterclaims, to the extent that they seek a reordering of the parties’ financial relationships, shall be severed and continued.