OPINION OF THE COURT
Debra Silber, J.
“[I]n New York State they have a strange law that says you can’t get a divorce unless you can prove adultery. That is weird *187 because the Ten Commandments say, ‘Thou shalt not commit adultery/ but New York State says you have to . . . it’s like a toss-up between God and [Governor] Rockefeller.” (Woody Allen.)
In a matter involving a different comedian, whose marriage was also no longer in the “Honeymooners” stage (Gleason v Gleason, 26 NY2d 28 [1970]), Judge Fuld of the New York Court of Appeals, writing for the majority, noted that, in 1966, the New York State Legislature repealed the State’s ancient divorce laws, which for almost 200 years had sanctioned divorce solely for adultery and enacted the Divorce Reform Law (L 1966, ch 254, eff Sept. 1, 1967) authorizing divorce on several other grounds. In addition to four enumerated grounds based on “fault,” the new section 170 of the Domestic Relations Law specified two “nonfault” grounds predicated on a couple’s living apart for a period of two years (subsequently reduced to one year [L 1970, ch 835, § 2]) after the granting of a separation judgment or decree (subd [5]), or the execution of a written separation agreement (subd [6]).
Outlining the public policy which underlies the concept of what we now call a “conversion divorce,” Judge Fuld noted that, if a reconciliation has not been effected within the statutory period following the separation, “the Legislature has concluded, and reasonably so, that the parties are irreconcilable and the marriage dead.” (Gleason v Gleason at 35.) Judge Fuld found that the legislative design was to render separation decrees and agreements a basis for divorce, and the “deliberate failure” of the legislators to provide any defenses to these grounds evinced and confirmed their intention of abandoning the traditional fault approach to divorce and permitting the termination of marriages if there was no longer a viable marriage. (Id.) The vital and operative requirement was that the parties live apart for at least the statutory period pursuant to a separation decree or agreement for which there is satisfactory proof of substantial performance. As Judge Fuld noted, the real purpose of the no-fault provisions was to sanction divorce on grounds unrelated to misconduct; the separation decree or agreement was simply intended as evidence of the authenticity and reality of the separation.
Implicit in the statutory scheme is the legislative recognition that it is socially and morally undesirable to compel parties to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the parties but of society *188 itself will be furthered by enabling them “to extricate themselves from a perpetual state of marital limbo.” (Id., quoting Adelman v Adelman, 58 Misc 2d 803, 805 [Sup Ct, Queens County 1969].) In New York State, public policy encourages the dissolution of “dead” marriages. (Berman v Berman, 72 AD2d 425 [1st Dept 1980]; Covington v Walker, 3 NY3d 287 [2004].)
In the instant matter, defendant wife has filed a motion seeking dismissal of plaintiffs action for divorce. The parties were married in September of 1996. In July of 2005, the parties executed a written agreement of separation, and filed it with the Clerk of Richmond County. On page 14 of the separation agreement appears the following language: “It is agreed that the husband shall not pursue a divorce against the wife for a period of five years from the signing of this agreement except by prior written consent of the wife.” On March 22, 2007, more than a year since its execution, plaintiff filed for divorce by summons with notice, on the stated grounds of abandonment, constructive abandonment, cruel and inhuman treatment and living apart for more than one year after execution of a separation agreement. In arguing that the matter be dismissed, defendant cites the above-described bar to filing for divorce as contained in the separation agreement, and states she has never given her husband the written consent required under the agreement. This is not disputed by the plaintiff. She also asks for attorney’s fees, stating that, under the circumstances, the action for divorce is frivolous.
As noted, in arguing that the matter be dismissed, defendant cites the separation agreement, and states she has never given her husband the written consent required in the agreement. In response, plaintiff husband’s attorney argues that his client executed the separation agreement without the advice or assistance of counsel. Despite the arguments of defendant’s counsel that this assertion is hearsay, this fact is made explicit on page 11 of the separation agreement where it states, “The Husband has been advised to obtain counsel in order to represent her [sic] in all matters relating to this Separation Agreement.”
Plaintiffs counsel further argues that the provision requiring plaintiff to wait five years before filing for divorce is, in effect, an improper injunction and restraint without a court order and that it violates existing law and section 6301 of the Civil Practice Law and Rules (as an injunction may only be issued in a pending action). (Granelli v Granelli, 134 AD2d 930 [4th Dept 1987].) He also argues that the agreement is void as against public *189 policy , as plaintiff cannot contract away an inalienable right. (See Matter of Liberman, 279 NY 458 [1939] [which did not allow a trust to restrain the right of its beneficiary to marry the person of one’s choice].) He further argues that the provision in the contract is without consideration.
In reply, the defendant points out that the right to divorce in New York is not absolute (Domestic Relations Law § 170). Defendant argues that there is a public policy favoring contractual arrangements. She notes that New York has a strong public policy favoring individuals deciding their own arrangements through contractual arrangements (Matter of Greiff, 92 NY2d 341 [1998]) and that Domestic Relations Law § 236 (B) (3) authorizes spouses to contract out of the statutory system in the event that the marriage ends. (Matisoff v Dobi, 90 NY2d 127, 132 [1997].) Moreover, she points out that a party seeking to set aside a separation agreement has the burden to prove fraud, duress, or overreaching, or that the agreement or stipulation is unconscionable. (Wilson v Neppell, 253 AD2d 493 [2d Dept 1998].) The court finds the provision in question is unconscionable.
The defendant’s motion is denied in its entirety. The provision in the separation agreement on which defendant relies is (1) void for being against public policy and unconscionable, and (2) void for attempting to circumvent the legislative prerequisite to divorce by separation for a minimum of one year to a minimum of five years by contract.
Marriage and divorce are matters which the State is deeply concerned about. (Christian v Christian, 42 NY2d 63 [1977].) Ordinarily, it is not the function of the law to protect people from their own foolishness, but a different standard is applied to marriage and divorce. (See Ezratty v Ezratty, 114 Misc 2d 22, 23 [Sup Ct, NY County 1982].) Generally, separation agreements which are written, signed and properly acknowledged are binding on the parties unless and until they are set aside. (See Schmelzel v Schmelzel, 287 NY 21, 26 [1941].) A court of equity does not limit its inquiry to determining the existence of a valid contract, but it further inquires into whether the contract (between husband and wife) was just and fair and equitably ought to be enforced and provides relief where both the contract and the circumstances require it. (Hendricks v Isaacs, 117 NY 411 [1889]; Christian v Christian at 65; Warren v Rabinowitz, 228 AD2d 492, 493 [2d Dept 1996]; Yuda v Yuda, 143 AD2d 657, 658 [2d Dept 1988]; Hardenburgh v Hardenburgh, 158 AD2d 585, 586 [2d Dept 1990].)
*190 It has been held that “marriage is an institution of society, creating a status which may be regulated and controlled by public law; that legislation affecting the institution or annulling the relation between the parties is not within the prohibition of the Constitution of the United States against the impairment of contracts.” (Tipping v Tipping, 82 F2d 828, 830 [DC Cir 1936].) Such agreements may be set aside under principles of equity. (Susquehanna S.S. Co. v Andersen & Co., 239 NY 285, 292-294 [1925].) It has been held that “[t]here is a strict surveillance of all transactions between married persons, especially separation agreements.” (Christian v Christian at 72; Hendricks v Isaacs at 417.) Equity is so zealous in this respect that a separation agreement may be set aside on grounds that would be insufficient to vitiate an ordinary contract. (Hungerford v Hunger-ford, 161 NY 550, 553 [1900]; Christian v Christian at 72.) With these principles in mind, courts have thrown their cloak of protection over separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably, and have refused to enforce those born of and subsisting in inequity. (Scheinberg v Scheinberg, 249 NY 277, 282-283 [1928]; Christian v Christian at 72; Yuda v Yuda, supra.)
To warrant equity’s intervention, no actual fraud need be shown, for relief will be granted if the settlement is unconscionable in that it is manifestly unfair to a spouse because of the other’s overreaching (see Matter of Baruch, 205 Misc 1122, 1124, affd 286 App Div 869 [2d Dept 1955]). In determining whether a separation agreement is invalid, courts may look at the terms of the agreement to see if there is any inference of overreaching in its execution (Christian v Christian at 72-73). The same analysis may be applied to one provision without invalidating the entire agreement (see e.g. Seligman v Seligman, 78 Misc 2d 632, 635 [Sup Ct, Kings County 1974]; Hummel v Hummel, 62 Mise 2d 595, 599 [Sup Ct, NY County 1970]; Taft v Taft, 156 AD2d 444, 445 [2d Dept 1989]; Jessup v LaBonte, 289 AD2d 295 [2d Dept 2001]).
The provision of the separation agreement at issue is breathtaking in its scope. It is, for one thing, not reciprocal. It only bars the husband, and not the wife, from pursuing a divorce within the five-year period. In this, it is strikingly unlike many of the other provisions which are reciprocal; these include the sections concerning “Non-Molestation,” “Separate Ownership,” “Responsibility for Debts,” “Personal Property,” “Other As *191 sets,” “Taxes,” “Mutual Release and Discharge of Claims,” and “Other Presentations [sic].” In the sections concerning the marital residence and retirement accounts, there is explicit consideration for the husband’s agreement to transfer his entire interest in the marital residence to the wife, and her agreement to waive her interest in the husband’s financial holdings. Other provisions, such as those concerning spousal maintenance, child support, and medical coverage, while not reciprocal, are seemingly intended to be equitable. Only the provision restricting the husband’s ability to file an action for divorce is so radically one-sided.
The provision is astonishing in other ways. It does not merely seek to block the husband from using the separation agreement as the basis for a conversion divorce. If that were the sole effect of the provision, this matter would likely not even be before the court, as plaintiffs counsel has indicated on the record and in his papers his client’s willingness to go forward on other grounds and he specifies other causes of action in his summons with notice. But, as the wife’s attorney points out, the separation agreement is written to bar the husband from seeking a divorce on any grounds whatsoever for the five-year period.
It is clear that this is a situation where inquiry is warranted into whether a provision of the settlement is so manifestly unfair as to be unconscionable (see Ezratty v Ezratty at 24; Yuda v Yuda at 658; Hardenburgh v Hardenburgh at 585-586).
An antenuptial agreement is unconscionable when the “inequality [is] so strong, gross, and manifest that it must be impossible to state it to [some]one with common sense without producing an exclamation at the inequality of it.” (McMullin v McMullin, 926 SW2d 108, 110 [Mo Ct App ED 1996].) An unconscionable bargain is regarded as one “such as no [person] in his [or her] senses and not under delusion would make on the one hand, and as no honest and fair [person] would accept on the other” (Cosh v Cosh, 45 AD3d 798, 799 [2d Dept 2007]; Christian v Christian at 71). As noted earlier, the court finds the provision of the separation agreement barring plaintiff from filing for divorce for five years to be unconscionable.
Defendant argues that agreements which induce a divorce, or are contingent on the parties divorcing, are in violation of public policy (see O'Rourke v Weston, 37 Misc 2d 733 [Civ Ct, NY County 1962]), but claims there is no such public policy issue in providing for the continuation of a marriage. In the face of the history of New York’s Domestic Relations Law, this argument is *192 preposterous. (See Domestic Relations Law § 170 [5], [6]; Gleason v Gleason, supra-, Christian v Christian, supra-, Covington v Walker, supra-, Tantleff v Tantleff, 60 Mis ( 2d 608 [1969], affd on limited grounds 33 AD2d 898 [1st Dept 1970].)
Domestic Relations Law § 170 (5) and (6) clearly express the public policy of the State of New York that separation decrees and agreements are, since their enactment, valid basis for a divorce. These statutes were designed to make separation a ground for divorce, regardless of fault, as long as the authenticity of the separation is supported by a separation decree or agreement. (Christian v Christian, 42 NY2d 63 [1977].) The statutes make clear that all that has to be proved is that there is some kind of formal document of separation* that the plaintiff has complied with its terms, and that the parties have lived apart pursuant to the document for the statutory period. (Gleason v Gleason, supra.) Once there has been a separation for one or more years following the execution and acknowledgment of the prescribed separation agreement (with which there has been substantial compliance) the right to a divorce becomes absolute. (Tantleff v Tantleff at 611.) The statute provides no condition or restriction on the right of either party to the agreement to commence an action for divorce. {Id.) The statute provides no defense for such an action.
In the wake of the 1966 reforms, case after case has held that even though individual clauses in a separation agreement were void, they could be severed, and the agreement otherwise provided sufficient grounds for divorce under Domestic Relations Law § 170 (6). {See e.g. Seligman v Seligman at 635; Hummel v Hummel at 599; Taft v Taft at 445; Jessup v LaBonte at 295.) Thus, even though a part of a separation agreement is declared void, the separation agreement still retains vitality as a basis for dissolution of the marriage.
Clearly the law permits the court to regard a marriage ended by a separation decree or agreement as a dead marriage which either party may terminate after a year has elapsed. (Tantleff v Tantleff at 611.) It is clearly contrary to the intent of the Legislature for separation agreements to serve as roadblocks to divorce actions, rather than as a basis for them.
Defendant’s citation of Kepner v Kepner (12 AD2d 204 [3d Dept 1961]); O’Rourke v Weston {supra) and Abillama v Carroll (13 Mise 3d 1235[A], 2006 NY Slip Op 52134[U] [Sup Ct, Suf *193 folk County, Nov. 14, 2006]) for the proposition that if “the terms of the separation are effective regardless of any divorce proceeding, [the separation agreement] is not against public policy” (O’Rourke v Weston at 734) is inapposite. Abillama does not even touch upon this topic, while the sentence quoted in O’Rourke, concerning the holding in Kepner, refers only to the public policy against separation agreements inducing divorces (see Domestic Relations Law former § 51), and has no broader application. Were the court to accept the logic of defendant’s counsel, a litigant could then argue that a separation agreement contingent upon the commission by one of the parties of a crime was not against public policy since such an agreement did not induce a divorce (and could even prevent one).
While the law recognizes a free right to contract, it will not enforce all contracts. Parties may incorporate into their contracts any provisions, provided they are not illegal, unconscionable, restricted by legislation or violative of public policy. (See 22 NY Jur 2d, Contracts §§ 137, 141.) An agreement to waive rights made in advance of their exercise will not be enforced if against public policy (see Hurley v Allman Gas Engine & Mach. Co., 144 App Div 300 [2d Dept 1911]; Kneettle v Newcom, 22 NY 249 [I860]; Matter of State of New York v Avco Fin. Serv. of N.Y., 50 NY2d 383 [1980]).
There can be no doubt that a provision in a separation agreement which attempts to frustrate the right of a party to seek a divorce, either using the agreement as its basis or otherwise, is against the State’s clearly articulated public policy of allowing parties to seek an end to “dead marriages” that are declared to be over in a written contract in compliance with the law (see Domestic Relations Law § 170 [5], [6]; Gleason v Gleason, supra; Christian v Christian, supra; Tantleffv Tantleff, supra).
Likewise, defendant’s reliance upon Domestic Relations Law § 236 (B) (3) for the proposition that parties to a separation agreement may use the agreement to opt out of the entire Domestic Relations Law is entirely misplaced. The parties to a separation agreement are not entirely free to contract as they choose; their agreement must conform to the laws of New York State. (See Matter of Tierney, 148 Mise 378 [Sur Ct, Bronx County 1933].)
Domestic Relations Law § 236 (B) (3) says that agreements made by the parties before or during the marriage shall be valid and enforceable in a matrimonial action provided they meet certain conditions. The statute provides that such agreements
*194 may include the following: (1) contracts to make or waive a provision of a will or the right to elect against an estate; (2) provisions for ownership, division and distribution of property; (3) provisions for amount and duration of maintenance, subject to other statutory provisions, and provided the terms are fair, reasonable, and not unconscionable; and (4) provisions for custody, care, education and maintenance of the parties’ children. It is noted that the case cited by defendant, Matter of Greiff (supra), deals specifically with the waiver of one’s statutory right of election against a will, one of the circumstances set forth in the statute as an appropriate subject for a pre or antenuptial agreement (Domestic Relations Law § 236 [B] [3]).
However, nowhere in Domestic Relations Law § 236 (B) (3) is there a provision specifying that such agreements may contain waivers of a party’s fundamental right to seek a divorce after a year, or for that matter, any other kind of waiver. It is a universal principle in the interpretation of statutes that expressio unius est exclusio alteráis. (McKinney’s Cons Laws of NY, Book 1, Statutes § 240; Matter of Bonnaffe, 23 NY 169 [1861].) That is, the specific mention of one thing implies the exclusion of other things. As otherwise expressed, where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted and not included was intended to be omitted and excluded (Doyle v Gordon, 158 NYS2d 248 [Sup Ct, NY County 1954]). Where a statute creates provisions as to certain matters, the inclusion of such provisions is generally considered to deny the existence of others not mentioned. (Statutes § 240.) As such, the “opt out” provisions of Domestic Relations Law § 236 (B) (3) do not provide legal cover to contracts purporting to opt out of the provisions of Domestic Relations Law § 170. It is the clear intent of Domestic Relations Law § 170 that the requirements of the statute concerning the prerequisites for the various matrimonial causes of action mean what they say (see Covington v Walker, supra [which discusses the prerequisites for a divorce based on the incarceration of a spouse for greater than three years]).
As such, no waiver of a person’s right to seek a divorce for longer than the statutory one year after execution of a separation agreement will be enforced by the court. The denial of defendant’s motion does not require the vacatur of the entire agreement. The separation agreement has an explicit provision for the severability of provisions found invalid by a court. More *195 over, even in the absence of the severability clause, the remainder of the agreement would be enforceable. Indeed, there is no recited consideration for the five-year provision, and the papers fail to address the total absence of consideration for Mr. B. to wait four years longer than the law provides. (See Domestic Relations Law § 170 [6]; see e.g. Seligman v Seligman at 635; Hummel v Hummel at 599; Taft v Taft at 445; Jessup v LaBonte at 295.) Even though a portion of the agreement is declared void, the separation agreement still retains its vitality as the prerequisite to an action for a conversion divorce.
In light of the foregoing, the motion is deemed a demand for service of a complaint. Plaintiff shall serve and file his complaint within 30 days of service upon him of this decision with notice of entry.

 It is not even necessary to resolve all financial matters in the agreement.