OPINION OF THE COURT
Matthew F. Cooper, J.
In this motion, brought in the context of an action for divorce that follows an earlier action for separation, the essential question before the court is whether the parties can condition their divorce upon the mercurial nature of the New York City real estate market. In the action for separation, the husband, Mark Filstein, and the wife, Sonia Bromberg, entered into a separation agreement which, among other things, requires them to sell the marital residence before either party may file for divorce. The husband now contends that the provision is void as against public policy and unenforceable. The wife counters that the clause is an enforceable condition precedent because there is no absolute right to divorce. She also argues that if the clause is found void, then the entire separation agreement should be set aside, an outcome which would invalidate financial terms that she feels have proven disadvantageous to her.
Background
The parties were married in 1989. They have one child, who is now emancipated. In 1998, the parties purchased the marital residence, a three-bedroom condominium located on West 23rd Street in Manhattan (the apartment). By all accounts the parties’ marriage deteriorated after the purchase of the apartment. According to the husband, in 2001 the wife moved out of the apartment. According to the wife, in 2007 the husband changed the locks on the apartment and forced her out. In either case, in October 2007 the wife brought an action for separation. On February 15, 2008, the parties entered into the separation agreement that settled the wife’s action for separation. The separation agreement (at art iy para 4 [G]), provides, in relevant part:
“Prior to the sale of the Apartment, (i) the parties’ attorneys shall prepare a package of documents for the parties and counsel to sign, pursuant to which the Husband will be able to obtain an uncontested divorce based upon the Wife’s having abandoned the Husband more than one year prior to the commencement of this action; and (ii) neither party *406 shall file any papers to obtain a judgment of divorce.”
More than four years after the parties entered the separation agreement resolving the 2007 action for separation, the apartment remains unsold and the parties remain married. The husband lives in the apartment with another woman and their three-year-old son. He would like to marry this woman but is unable to do so because he is still married to the wife. The husband attributes this unhappy situation to the wife, who he contends has prevented the sale of the apartment by insisting on inflated selling prices that are out of line with market conditions. By so doing, the husband charges, the wife has been able to use the “no divorce prior to sale” clause of article IV¡ paragraph 4 (G) of the separation agreement (the no-divorce clause) to keep him locked into a marriage that exists in name only.[1]
In order to extricate himself from this state of marital limbo, the husband commenced a new action in March 2011. This new action is both an action for divorce and an action for a declaratory judgment determining that the no-divorce clause of the separation agreement is unenforceable. The husband’s complaint sets forth three grounds for divorce: abandonment (Domestic Relations Law § 170 [2]); living separate and apart pursuant to separation agreement (Domestic Relations Law § 170 [6]); and irretrievable breakdown of the marriage (Domestic Relations Law § 170 [7]).
The husband now moves, pursuant to Civil Practice Law and Rules § 3212, for partial summary judgment on his cause of action for a declaratory judgment. He argues that conditioning the ability to obtain a judgment of divorce on the parties’ ability to sell the apartment defies public policy. The husband also moves, pursuant to CPLR 3211 (b), to dismiss the 13 affirmative defenses raised by the wife in her answer and, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the 16 counterclaims she has interposed.
The wife opposes both branches of the husband’s motion. She also cross-moves for various forms of relief, including the dis *407 missal of the husband’s complaint in its entirety, the dismissal specifically of the husband’s cause of action for divorce pursuant to Domestic Relations Law § 170 (7), a stay of the proceedings, and an award of counsel fees. The basic thrust of the wife’s opposition to the husband’s attempt to invalidate the no-divorce clause is that the clause is an enforceable contractual provision and that striking it would amount to the court finding that there is an absolute right to divorce. The wife also argues that if the no-divorce clause is held to be unenforceable, then she is entitled to have the entire separation agreement invalidated. This argument is in line with the affirmative defenses that she has asserted and the counterclaims she has interposed, many of which seem to allege in one form or another that the financial terms of the separation agreement, particularly the waiver of spousal maintenance, render the agreement unconscionable.
Analysis
A. The Husband’s Motion for Partial Summary Judgment
The first branch of the husband’s motion seeks summary judgment on his cause of action for a declaration that the no-divorce clause of article iy paragraph 4 (G) of the parties’ separation agreement defies the public policy governing divorces in this state by limiting one’s ability to obtain a divorce. To determine whether the provision does in fact violate public policy, it is necessary first to ascertain what that public policy is. The starting point for such analysis is to briefly trace the history and development of New York’s divorce law.
Between 1787 and 1966, a husband and wife could only divorce if one could prove adultery at trial. (Covington v Walker, 3 NY3d 287, 290-291 [2004].) It was not until 1966 that the Legislature created three additional fault-based grounds for divorce: cruel and inhuman treatment; abandonment for a period of two years; and the defendant’s incarceration for at least three consecutive years. (See Domestic Relations Law § 170 [l]-[4].) The 1966 reforms also created two nonfault grounds (as opposed to no-fault grounds): living apart pursuant to a judgment of separation for a period of two years and living apart pursuant to a separation agreement for a period of two years. (See Domestic Relations Law § 170 [5]-[6].) The purpose underlying these changes was to “recognize grounds for divorce ... as manifestations of dead marriages, marriages that should be terminated for the mutual protection and well being of the parties and, in most instances, of their children.” (Covington, 3 *408 NY3d at 290-291, citing 1966 Report of Joint Legis Comm on Matrimonial & Family Laws to Legislature of State of NY at 85.) The 1966 reforms marked the first time the Legislature began moving away from the idea that a divorce requires an innocent and guilty party.
In the famous case involving the divorce of comedian Jackie Gleason, Gleason v Gleason (26 NY2d 28 [1970]), the Court of Appeals held that the two nonfault grounds could be applied retroactively to couples who lived separately before the statute was enacted. The Court wrote:
“[S]ince the Legislature was intent on providing nonfault grounds for divorce and sanctioning divorce decrees where the marriage was dead — as attested by the specified two-year separation — it would be anomalous ... to permit judicial termination of marriages which became dead after September 1, 1966, but not those whose demise preceded that date.” (Id. at 37-38 [internal quotation marks and citations omitted].)
The Gleason Court further laid out New York’s public policy position:
“Implicit in the statutory scheme is the legislative recognition that it is socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the parties but of society itself will be furthered by enabling them ‘to extricate themselves from a perpetual state of marital limbo.’ ” (Gleason, 26 NY2d at 35, quoting Adelman v Adelman, 58 Misc 2d 803, 805 [Sup Ct, Queens County 1969].)
The Legislature’s subsequent amendments further simplifying the ability to obtain a divorce reinforce this position. In 1972, the Legislature reduced the two-year requirements in section 170 (2), (5) and (6) to one year, and in 2010 it enacted the ground of irretrievable breakdown of the marriage, making New York the last state to adopt true no-fault divorce. Using this ground, a party seeking divorce need only swear under oath that the marriage has been irretrievably broken for a period of six months. (See Domestic Relations Law § 170 [7]; see also e.g. Townes v Coker, 35 Misc 3d 543, 547 [Sup Ct, Nassau County 2012] [“Thus, once a party has stated under oath that the marriage has been irretrievably broken for a period of at least six months, the cause of action for divorce has been established as *409 a matter of law”].) From this history, it can readily be concluded that the legislative trend over the past 50 years has been to make obtaining a divorce progressively less burdensome.
With this in mind, the next step is to examine how courts, when dealing with agreements purporting to limit the ability of parties to divorce, have applied the public policy favoring the ability of spouses to terminate a marriage. Generally, separation agreements represent the parties’ wishes and consensus and should not be overruled lightly. However, in Christian v Christian (42 NY2d 63, 65, 72 [1977]), the Court of Appeals wrote: “Marriage being a status with which the State is deeply concerned . . . courts have thrown their cloak of protection about separation agreements and made it their business, when confronted, ... to set aside or refuse to enforce those born of and subsisting in inequity.”
In the case of P.B. v L.B. (19 Misc 3d 186 [Sup Ct, Richmond County 2008]), the trial court applied Gleason to a party’s challenge of a separation agreement clause preventing the husband from filing for divorce for five years after the parties signed the agreement. The court found that the clause was unenforceable, stating that “no waiver of a person’s right to seek a divorce for longer than the statutory one year after execution of a separation agreement will be enforced by the court.” (Id. at 194.) Subsequently, another trial court found that a separation agreement preventing either spouse from commencing a divorce action for five years was void for the same reasons. (Corso v Corso, 21 Misc 3d 1102[A], 2008 NY Slip Op 51917[U] [Sup Ct, Westchester County 2008].)
In a more recent decision, McKeon v McKeon (78 AD3d 667 [2d Dept 2010]), the Appellate Division, Second Department, reversed the decision of the trial court vacating an agreement on the basis of public policy. It did so, however, because it found, contrary to the trial court, that “the parties’ postnuptial agreement does not violate public policy, as it does not prevent the wife from commencing an action for a divorce.” {Id. at 668 [citations omitted].) Unfortunately, the terms of the agreement in question in McKeon are not set forth in the decision, but it must be assumed that if those terms could be construed as preventing a party from commencing a divorce — as the no-divorce clause of article IV, paragraph 4 (G) unquestionably does — then the Appellate Division would have held them to be unenforceable as violating public policy. Thus, recent case law, both at the trial and appellate level, has not favored separation agreements that interfere with a party’s right to seek a divorce.
*410 The no-divorce clause presented here is in some ways even more onerous than the clauses found unenforceable by the courts in P.B. v L.B. and Corso v Corso. In those cases, the parties were at least assured an ability to divorce after five years. In this case, the parties’ marriage could be interminable depending on the interest and proclivities of New York City apartment buyers. Absent the apartment selling, neither party will ever be able to divorce the other.
As one might expect, the parties blame one another for why their apartment — a condominium unit in an upscale building in a desirable neighborhood — sits unsold. The wife contends that the husband feigns interest in selling but in reality refuses to cooperate in efforts to do so, in order to maintain the status quo and continue to live with his new family in an apartment partially owned by the wife. She maintains that if the husband can bypass the agreement’s no-divorce clause and proceed with the divorce, he will have no incentive to sell the apartment and she will be unable to realize the payout she stands to gain from the sale. The husband, on the other hand, believes it is the wife who has blocked the sale of the apartment, her real motive being to force him to renegotiate the financial terms of the separation agreement, particularly her waiver of maintenance.
In the end, however, it is pointless to wade through the parties’ bickering as to why the apartment has not sold. After all, there are far more appropriate ways to enforce an agreement to sell an apartment than to prohibit divorce. If the parties are unable to accomplish the sale themselves, then the court can force a sale (CPLR 5103), appoint a receiver (CPLR 5106), or order a conveyance by a sheriff (CPLR 5107). Implementing these powers would serve to dispose of the property so that the proceeds can at last be divided between the parties. Moreover, this can be done while the divorce moves forward, allowing the parties to sever their ties and, in accordance with the policy of this state, finally bring their long-dead marriage to an end.
Having determined that the no-divorce clause at issue runs counter to New York public policy, the court then turns to the various arguments made by the wife as to why the clause should nevertheless be found enforceable. First, the wife argues that the clause in question is enforceable because it is a condition precedent. That a contract provision is a condition precedent does not, however, immunize it from a challenge that it is unenforceable. (See Restatement [Second] of Contracts § 178 [1] [“A promise or other term of an agreement is unenforceable on *411 grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms”].) Thus, the fact that the agreement’s no-divorce clause may be a condition precedent has no bearing on it being unenforceable as against public policy.
The wife also argues that the clause is enforceable because there is no absolute right to divorce. She cites Berman v Berman (72 AD2d 425 [1st Dept 1980]), in which the Appellate Division, First Department, held that the plaintiff in a divorce action could not obtain a divorce pursuant Domestic Relations Law § 170 (6) without substantially complying with the separation agreement. Berman is inapplicable here, however, because the issue raised by the husband’s action for a declaratory judgment is his right to seek a divorce under any grounds, not his right to obtain a divorce specifically under Domestic Relations Law § 170 (6). Moreover, a discussion of whether an absolute right to divorce exists is of no moment inasmuch as the court, for the reasons stated previously, has already found that the no-divorce clause here impermissibly restricts the parties’ ability to divorce. Put another way, the clause may not be the only obstacle that exists between the parties and a divorce — there being jurisdictional and other requirements that need to be met before a divorce can be granted — but it is an exceedingly burdensome, and thus impermissible, obstacle.
The final step in deciding this branch of the husband’s motion is to determine whether the husband has met the well-established standard for the granting of summary judgment. A movant seeking summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to eliminate any material issues of fact. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) Once a showing has been made, the burden shifts to the opposing party, who must then demonstrate the existence of a triable issue of fact. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980].) Here, the husband has satisfied his burden of establishing his entitlement to judgment as a matter of law on the issue of whether the no-divorce clause of the separation agreement violates public policy and is thus unenforceable. (Cf. McKeon, 78 AD3d 667 [2010].) The wife, in opposition, has failed to raise a triable issue of fact. Accordingly, that portion of the husband’s motion for partial summary judgment must be granted.
*412 B. The Husband’s Motion to Dismiss the Wife’s Affirmative Defenses and Counterclaims
The second branch of the husband’s motion seeks to dismiss the wife’s 13 affirmative defenses and 16 counterclaims. In his moving papers, the husband accuses the wife of “attempting to flood” the court with a “kitchen sink” consisting of “every affirmative defense and counterclaim she could think of, no matter how absurd.” To a large extent, the husband’s assessment is correct, especially as concerns the affirmative defenses. The majority of those defenses are pleaded in single sentences, and appear to have absolutely no basis in law or fact, particularly in light of this court’s finding that the no-divorce clause is unenforceable. Therefore, the wife’s second, third, fourth, fifth, sixth, seventh, eighth, tenth, eleventh, twelfth and thirteenth affirmative defenses merit no further discussion and must all be dismissed.
The wife’s first affirmative defense, that the husband’s claims are barred in whole or in part for their failure to state a claim upon which relief may be granted, is also without a basis. The complaint’s first cause of action, whereby the husband seeks a judgment declaring the no-divorce clause to be unenforceable, most certainly states a claim upon which relief may be granted. Indeed, as set forth above, he is entitled to summary judgment on this claim. The complaint’s other three causes of action, each for divorce based on a different subdivision of Domestic Relations Law § 170, indisputably state claims upon which relief can be granted. Accordingly, this defense, too, must be dismissed.
Finally, the wife’s ninth affirmative defense, that the husband’s claims are unconstitutional, is contrary to law. The right to marry a person of one’s choice is fundamental (see Loving v Virginia, 388 US 1 [1967]; Zablocki v Redhail, 434 US 374 [1978]). It does not follow, however, that certain marital rights cannot be abridged or that the provisions of a separation agreement are immune from being set aside. As our Court of Appeals wrote in Gleason-.
“Marriage is not a contract. . . within the meaning of the provision of the Federal Constitution which prohibits the impairment by the States of the obligation of contracts. This being so, rights growing out of the [marriage] relationship may be modified or abolished by the Legislature without violating the provisions of the Federal or State Constitution . . . .” *413 (Gleason, 26 NY2d at 42 [citations and internal quotations marks omitted].)
Accordingly, any contention by the wife that she has a constitutional right to remain married or to rely on an unenforceable provision of the separation agreement is unfounded. The wife’s ninth affirmative defense must therefore be dismissed.
Unlike the wife’s affirmative defenses, not all of her counterclaims are subject to dismissal at this stage. The wife’s first counterclaim, that the husband breached the separation agreement, contains four subsections. The second, third and fourth subsections allege that the husband breached various provisions of the agreement other than the no-divorce clause and that in so doing caused her financial injury. They adequately set forth claims and will thus be held to survive the husband’s motion to dismiss.
The wife’s other counterclaims do not fare as well. Some of them are patently lacking in merit and can be dealt with in short order. Two of the counterclaims, though, need more extended discussion. They concern the issues of maintenance and the recision of the separation agreement in its entirety, two issues that apparently play an indirect yet significant role in how this litigation has unfolded. As stated previously, the husband contends that the wife’s real motive in seeking to block him from proceeding with a divorce is to gain leverage with which to make him renegotiate the agreement.
In the twelfth counterclaim, the wife seeks to have article IX, paragraph 9 (A), the provision by which the parties waived maintenance, declared void and unenforceable. Unfortunately for the wife, neither the law nor the facts support her claim. The Appellate Division, First Department, has held that agreements between spouses waiving maintenance in the event of divorce are fully enforceable, provided they are entered into without any undue influence. (Strong v Dubin, 48 AD3d 232 [1st Dept 2008].) The wife offers no evidence to support a claim of undue influence when she entered the agreement, an agreement that was entered into with both sides having lawyers representing them. Nor is there any evidence to suggest that she is in danger of becoming a public charge, something that could potentially override the agreement’s waiver of maintenance. Not only is the wife a practicing attorney, but it is undisputed that she owns property in Israel. Moreover, she has a substantial ownership interest in the West 23rd Street apartment, an interest that will result in a significant payout to her *414 when the apartment is finally sold. As a result, this counterclaim cannot withstand the husband’s motion to dismiss.
The wife’s thirteenth counterclaim, seeking declaratory judgment for recision of the entire separation agreement due to unconscionability, is equally lacking in merit. A separation agreement “which is fair on its face will be enforced according to its terms unless there is proof of . . . unconscionability.” (Doukas v Doukas, 47 AD3d 753, 753-754 [2d Dept 2008].) An unconscionable agreement is one which
“no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense.” (Morad v Morad, 27 AD3d 626, 627 [2d Dept 2006].)
An agreement is not unconscionable simply because it appears inequitable in retrospect. (See O’Lear v O’Lear, 235 AD2d 466, 466 [2d Dept 1997]; see also Cosh v Cosh, 45 AD3d 798, 799 [2d Dept 2007] [finding that alleging an unequal division of assets is insufficient to find unconscionability].) Here, both parties were represented by counsel when they entered the agreement, it was counsel who drafted the agreement, and the wife herself is an attorney. Although the no-divorce clause of article I\^ paragraph 4 (G) has been deemed unenforceable, there is nothing else in or about the agreement that could be said to shock the conscience or “confound the judgment.” Therefore, this counterclaim must be dismissed.
The second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh counterclaims are all based to one extent or another on either the contention that the husband breached the parties’ separation agreement by filing for divorce in contravention of the agreement’s no-divorce clause or else that the separation agreement itself is unconscionable. If the no-divorce clause were enforceable, the husband could conceivably be found to have breached the agreement. But, because the clause is unenforceable, it cannot give rise to a breach. Additionally, as stated above, there is no basis to support a finding that the separation agreement is unconscionable or should be rescinded or reformed in any way beyond the elimination of the no-divorce clause. Accordingly, these 10 counterclaims must be dismissed.
C. The Wife’s Cross Motion
As with her affirmative defenses and counterclaims, much of what the wife seeks in her cross motion is difficult to fully *415 comprehend. Her first request is to dismiss the husband’s complaint in its entirety, while the second is to dismiss only the husband’s cause of action for a divorce on the grounds of irretrievable breakdown pursuant to Domestic Relations Law § 170 (7). The wife provides no legitimate reason why either should be dismissed, so these requests for relief must be denied.
The third prong of the cross motion is a request for a stay of the proceedings. It appears that the stay that the wife is seeking is one pending the determination of her appeal from a decision of another justice of this court denying her motion to dismiss the husband’s complaint for lack of proper service. The request for a stay has already been denied by the Appellate Division. There is absolutely no reason for this court to grant a stay and only further prolong these matters.
An issue that is not directly addressed in the cross motion but which was discussed by the wife at great length at oral argument is whether the entire separation agreement must fall if the no-divorce clause is void and unenforceable. It is the wife’s position that if the court strikes the provision, then it must strike the entire agreement. The wife’s argument' is unavailing. First, the agreement contains a severability clause (art XVIII, para 18 [G]). Second, case law makes clear that when a clause in a separation agreement is voided, it can be severed and the rest of the agreement may stand. (P.B., 19 Misc 3d at 192, citing Jessup v LaBonte, 289 AD2d 295 [2d Dept 2001]; Taft v Taft, 156 AD2d 444 [2d Dept 1989]; Seligman v Seligman, 78 Misc 2d 632 [Sup Ct, Kings County 1974]; Hummel v Hummel, 62 Misc 2d 595 [Sup Ct, NY County 1970].) Third, Christian v Christian, on which both parties rely, holds that courts must, to the greatest extent possible, defer to separation agreements. (42 NY2d at 71-72.) Here, both parties bargained for this agreement and both parties had lawyers during negotiations. The fact that one paragraph in the 39-page agreement is deemed to contravene public policy does not warrant striking the entire agreement. Therefore, the court finds the rest of the agreement is valid and remains enforceable.
The last matter to be considered in the wife’s cross motion is her request for $50,000 in attorney’s fees pursuant to article XVII, paragraph 17, the agreement’s default clause. First, inasmuch as there has been no showing to this point that the husband breached the agreement, there is no basis to award attorney’s fees under a default clause. Second, the wife, an attorney, represented herself in this proceeding up until the oral *416 argument on the motion.[2] Self-represented individuals, whether attorneys themselves or not, are generally not entitled to fees in matrimonial actions. Finally, the work that the wife performed on her own behalf consists largely of drafting the 13 affirmative defenses and the 16 counterclaims, the bulk of which were improper and baseless, and the opposition papers that served to confuse more than enlighten; nothing merits counsel fees. Accordingly, the wife’s request for attorney’s fees must be denied.
Conclusion
There is no doubt that the husband and the wife are in a dead marriage and that the no-divorce clause is only prolonging an intolerable situation. The parties have been legally separated for four years, and physically and emotionally separated for much longer. The husband has moved past this marriage: he is in a devoted relationship with another woman and is now raising a second child. But instead of fully moving on with their lives, the parties seek to lay blame on one another for the apartment’s languishing on the real estate market. Whatever the reason for the sale’s inertia, the no-divorce clause is responsible for indefinitely delaying the parties’ divorce.
After reviewing the public policy articulated by the New York State Legislature and by case law, the court finds that an agreement obligating parties to sell their apartment before they may divorce contravenes that policy and is thus unenforceable. It is well past the time for both sides to move forward to sell the apartment, by either utilizing the provisions contained in their separation agreement or the remedies provided pursuant to statute. And it is well past the time for the parties to end a marriage that is as irretrievably broken as a marriage can possibly be.
In light of the foregoing, it is hereby ordered that plaintiff husband’s motion for partial summary judgment is granted; and it is further ordered, adjudged and declared that article IY paragraph 4 (G) of the parties’ separation agreement is void as against public policy and unenforceable; and it is further ordered that plaintiffs motion to dismiss defendant wife’s affirmative defenses is granted; and it is further ordered that plaintiffs motion to dismiss defendant’s counterclaims, except for the second, third and fourth subsections of the first *417 counterclaim, is granted; and it is further ordered that defendant’s cross motion is denied.

. It must be noted that the situation in which the husband finds himself is to some degree one of his own making. He was represented by counsel — in fact the same counsel who represents him now — when he voluntarily signed the separation agreement containing the provision that he asks the court to find is void as against public policy. One is left to wonder how the husband’s counsel, who by all estimates is an experienced matrimonial attorney, could have allowed his client to agree to such a provision.

. The wife, who is admitted to practice in New York, New Jersey and Utah, drafted all her papers pro se. At oral argument, however, she was represented by a lawyer for whom she works.